1   Paul L. Hoffman, SBN 71244
    Catherine Sweetser, SBN 271142
2   Schonbrun DeSimone Seplow
    Harris & Hoffman LLP
3   723 Ocean Front Walk
    Venice, California 90291
4   Telephone: (310) 396-0731
    Fax: (310) 399-7040
5
    Attorneys for Plaintiff
6   Nolan Lewis

7

8

9                  **UNITED STATES DISTRICT COURT**

10            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12   NOLAN LEWIS, an individual,            )   CASE NO:
                                            )
13                      Plaintiff,          )   COMPLAINT
                                            )
14   v.                                     )   FIRST CLAIM FOR RELIEF
                                            )   VIOLATION OF THE PRIVACY
15   WILLIAM MOSSBROOK, CHAD                )   ACT
     JOY, MABEL DEA, MICHAEL                )
16   FISHER, in his official capacity as    )   SECOND CLAIM FOR RELIEF
     Director of the Veteran's              )   FOURTH AMENDMENT
17   Administration Long Beach Facility;    )   VIOLATION: FALSE ARREST
     THE DEPARTMENT OF                      )
18   VETERAN'S AFFAIRS, a public            )   THIRD CLAIM FOR RELIEF
     entity AND DOES 1 - 10,                )   FOURTH AMENDMENT
19                                          )   VIOLATION: UNREASONABLE
                        Defendants.         )   AND EXCESSIVE USE OF FORCE
20                                          )
                                            )   FOURTH CLAIM FOR RELIEF
21                                          )   VIOLATION OF FOURTH AND
                                            )   FIFTH AMENDMENT RIGHTS:
22                                          )   MALICIOUS PROSECUTION
                                            )
23                                          )   FIFTH CLAIM FOR RELIEF
                                            )   VIOLATION OF FIFTH
24                                          )   AMENDMENT RIGHTS: ABUSE OF
                                            )   PROCESS
25                                          )
                                            )   SIXTH CLAIM FOR RELIEF
26                                          )   [VIOLATION OF THE
                                            )   REHABILITATION ACT OF 1973]
27                                          )
                                            )   DEMAND FOR JURY TRIAL
28   _____       )

                        COMPLAINT FOR DAMAGES

# **INTRODUCTION**

1.     This case involves wrongful detention, false arrest, excessive force, malicious prosecution, and discrimination against Mr. Nolan Lewis ("Plaintiff ") by agents and officials of the country he served during the Vietnam War. Although the Veteran's Administration ("VA") diagnosed Plaintiff to suffer from service-connected PTSD – the VA denied him medical care for more than 30 years. In 2004, the VA classified Plaintiff 100 percent disabled due to service connected P.T.S.D arising from infantry combat duty in Vietnam.  From 2004 to 2011, Plaintiff received treatment from the medical facility in Austin, Texas.  From 2012 to present, Plaintiff has received treatment at the Long Beach VA Medical Center.

2.     In April 2014, VA agents subjected Plaintiff to an hours-long discriminatory and intensely inhumane interrogation.  Agents conducted this interrogation without justification or prior consideration of Plaintiff 's well documented disabilities.  As a result of the interrogation and misrepresentations made by defendants, the Los Angeles District Attorney erroneously charged Plaintiff with criminal misconduct (making "terrorist threats").  At an August 21, 2014 preliminary hearing on that charge, the Honorable Arthur Jean Jr. of the Los Angeles Superior Court found that even on the prosecution's best evidence, Plaintiff committed no crime.  Judge Jean Jr. dismissed the charges against Plaintiff.

3.     Instead of accepting this judgment, the next day VA police officers and the prosecutor reinstituted the same charges without cause and added a false charge of witness intimidation.  Defendants maliciously waited until the following Thursday afternoon before Labor Day weekend when they knew Plaintiff was coming to the VA for medical treatment, and held Plaintiff at the Long Beach VA until after normal business hours, to arrest Plaintiff.  They did so for the improper purpose of ensuring he would suffer in jail over the long weekend.  Instead of supporting Plaintiff and respecting the sacrifice he made for his country, the VA

COMPLAINT FOR DAMAGES

1   and its agents and officials have made his life a nightmare all over again.  This

2   action seeks to right these wrongs.

3                          **JURISDICTION AND VENUE**

4          4.     This case arises under 5 U.S.C. § 552a of the Privacy Act of 1974; 42

5   U.S.C. § 1983 and the Fourth and Fifth Amendments of the U.S. Constitution; and

6   §504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq.  This Court has

7   subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

8   1343.  This Court has jurisdiction over Plaintiff's Privacy Act claims under 5

9   U.S.C. § 552a(g)(1)(D) and (5).  Plaintiff has filed an administrative claim under

10  the Federal Tort Claims Act ("FTCA") and will seek to amend his complaint to add

11  FTCA claims for damages against the Unites States if that claim is denied.

12         5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and

13  (e) in that the unlawful actions challenged herein occurred in the Central District.

14  Venue is proper in this District over Plaintiff's Privacy Act claims pursuant to 5

15  U.S.C. §a(g)(5).

16                                **PARTIES**

17         6.     Plaintiff Nolan Lewis brings this action individually.  After attending

18  Narbonne High School and Los Angeles City Harbor Junior College, Plaintiff was

19  drafted to serve in the United States Army and deployed to Vietnam during the

20  Vietnam War.  He served in active combat from 1971 to 1972 with the 101st

21  Airborne Division and the 1st Air Cavalry.  For his multiple air assaults and

22  outstanding combat service, Plaintiff was awarded, *inter alia*, a bronze star, a

23  Combat Infantry Badge, a National Defense Service Medal, a Vietnam Service

24  Medal, and a Vietnam Campaign Medal with 60 device.

25         7.     After Plaintiff returned from combat in 1972, he was diagnosed with

26  PTSD and Agent Orange exposure during his service in Vietnam.  Although he

27  attempted to obtain services from the VA many times, it was not until 2004 that the

28  VA began to provide him with the medical and psychological services he depends

COMPLAINT FOR DAMAGES

on to function.  Plaintiff is 100 percent disabled due to his service and receives all of his medical, dental, and mental health care at the VA's Long Beach Medical Center ("VALB").

8.    Defendants William Mossbrooks and Chad Joy are law enforcement officers for the Veteran's Administration Police Department ("VAPD"): a detective and special agent for the Office of the Inspector General (OIG), respectively.  At all times material hereto Defendants were acting under the color of federal authority.  They are sued in their individual capacities.

9.    Mabel Dea works in the Pharmacy at the VALB.  She is sued in her individual capacity as the complaining witness who provided false information to VA officials and the District Attorney's office, leading to Plaintiff's arrest and prosecution.  She is not sued based on any in-court testimony she has given in this matter.

10.    The VA is the federal agency responsible for providing care for our Nation's veterans.   The VA is sued only on Plaintiff's claims under the Privacy Act and the Rehabilitation Act of 1973.

11.    Michael Fisher is the current Director of the VALB.  He is in charge of implementing all VA policies and regulations.  Defendant Fisher is sued in his official capacity for injunctive relief, to ensure those policies are implemented properly in the future and that VA operations in Long Beach comply with the constitutional rights of their patients.

12.    Plaintiff is informed, believes, and thereon alleges that at all relevant times, defendants DOES 1-10 were responsible for some or all of the acts complained of herein.  Plaintiff is ignorant of the true identities and capacities of defendants DOES 1-10.  For that reason, he sues those defendants by such fictitious names.  Plaintiff is informed, believes, and thereon alleges that each fictitiously named defendant is in some manner and to some extent liable for the injuries this complaint alleges.  Plaintiff will seek leave to amend this complaint to

COMPLAINT FOR DAMAGES

allege the true identities and capacities of these fictitiously named defendants when they are ascertained.

13.   Plaintiff is informed, believes, and thereon alleges that each defendant is, and at all times mentioned was, the agent, employee, representative, successor, and/or assignee of each other defendant.  In performing the acts or omissions this complaint alleges, each defendant acted within the scope of his or her actual or apparent authority.  Alternatively, each defendant-principal ratified and adopted the acts or omissions of each defendant-agent.  The defendant officers, including those involved in the obstruction of justice, engaged in a conspiracy to violate Plaintiff's constitutional rights and acted as co-conspirators with this aim in mind.

14.   All individual defendants acted under the color of state or federal law at all times relevant to the allegations herein, and are sued in both their individual capacities unless otherwise specified.

15.   In committing the acts this complaint alleges, the individual defendants acted knowingly, maliciously, and with reckless or callous disregard for Plaintiff 's constitutional and other rights, justifying an award of punitive damages against each individual defendant.

**STATEMENT OF FACTS**

16.   Plaintiff's ordeal began on April 9, 2014.  Plaintiff called the VA Pharmacy in Long Beach in an attempt to refill his PTSD medications, without which he is unable to function.  An unidentified employee at the Pharmacy hung up on him twice without addressing what Plaintiff viewed as a medical emergency.  Finally, he was able to speak to Defendant Mabel Dea, a clinical pharmacist. Defendant Dea was helpful and indicated she would make sure his medications were available the following day.  Plaintiff complained to Defendant Dea about the poor service he had received from the pharmacy, including that he had been hung up on multiple times.  Plaintiff said nothing to Defendant Dea that any responsible person could possibly construe as a threat against anyone.  Plaintiff was

COMPLAINT FOR DAMAGES

1   complaining about the rude and unhelpful treatment he received before he spoke to

2   Defendant Dea.

3       17.   The following day, Plaintiff went to the VALB, without incident, to

4   pick up his critical medications from the pharmacy.   Unbeknownst to him,

5   Defendant Dea had falsely reported to her supervisor, most of her co-workers in

6   the Pharmacy, and the VA Police that Plaintiff had threatened his VA doctor, Dr.

7   Merchant.

8       18.   When Plaintiff returned to his home in Lomita that afternoon, he

9   found a business card left by Special Agent Chad Joy ("Defendant Joy"), of the

10  VA's Office of the Inspector General ("OIG").  Defendant's Joy's cell phone

11  number was scrawled on the card.  Plaintiff immediately called Defendant Joy,

12  who told Plaintiff he would like to visit him the following day to interview him

13  about an incident that had occurred in his neighborhood.  Defendant Joy did not

14  provide additional details about the incident, but Plaintiff immediately agreed to

15  meet with him.

16      19.   About an hour and a half later, Plaintiff was startled by a loud knock

17  at his door.  When he looked through the door window, he saw Defendant Joy and

18  Detective William Mossbrooks ("Defendant Mossbrooks").  Plaintiff went outside

19  to talk to the officers on his porch.  Defendant Joy stated he was a Special Agent

20  with the OIG.  His badge was on his belt.  Defendant Mossbrooks stated he was an

21  FBI Agent.  Plaintiff thought Defendant Mossbrooks looked more like a drug

22  dealer, as he had shaggy hair  and a T-Shirt and wore faded jeans and dirty tennis

23  shoes.  Becoming scared, Plaintiff asked Defendant Mossbrooks to show him proof

24  of identification.  Mosbrooks pulled a badge from his pocket.  Plaintiff looked and

25  saw the letter, "FBI."  After a few more minutes of Mossbrook's foul language and

26  rude behavior, believing Mosbrooks could not possibly be an FBI agent, Plaintiff

27  requested a second time and in fact saw the letters, "FBI."  After a short period of

28  time, neighbors began exiting their homes to see what was happening on

COMPLAINT FOR DAMAGES

1    Plaintiff 's porch.  As more and more people began to crane their necks to see what

2    was going on, Defendant Joy stated he was satisfied with the information Plaintiff

3    provided them and told Plaintiff the interview would be over on one condition:

4    That the officers could do a quick search of Plaintiff's home to ensure he had no

5    weapons.  Plaintiff did not want to grant the officers entry into his home, but they

6    ultimately prevailed on him to let them in.  He allowed the two men to come into

7    his home with specific permission only to search for weapons, even though they

8    did not have a warrant.

9          20.     The officers asked Plaintiff if he had any guns, and he replied that he

10   did not.  They asked to search his home for guns, and he consented to a search for

11   that limited purpose.  Defendant Mossbrooks then conducted a search that went far

12   beyond the consent Plaintiff had given.  Mossbrooks also went through Plaintiff's

13   papers, Samsung tablet and cell phone.

14         21.     Once inside his house Defendants Mossbrooks and Joy questioned

15   Plaintiff in an aggressive and intimidating manner designed to exacerbate his

16   PTSD symptoms. They claimed Plaintiff has made "a threatening phone call" to a

17   VA employee and insisted they would would leave him alone only if he admitted

18   to making this call. Defendants Mossbrooks and Joy warned that they would

19   arrange for Plaintiff to be detained in jail over a weekend if he did not admit he

20   made the call.  Mossbrooks accused him of lying about the call he made to the

21   pharmacy.  As Defendants badgered Plaintiff, he suffered increasing symptoms of

22   PTSD.  The physically imposing Defendant Mossbrooks directed epithets, curses,

23   and other threatening and demeaning language at Plaintiff in an effort to intimidate

24   him.   Pacing and lunging repeatedly at Plaintiff physically, Mossbrooks called

25   Plaintiff a "fuckin' liar," a "fuckin' asshole," a "piece of shit," and "one of those

26   Vietnam baby killers."  Mossbrooks  not only mocked Plaintiff's military service

27   but also his religion.  Upon finding Plaintiff's PTSD medications Mossbrooks said,

28   "You take all these meds, you're a fuckin' pill head."  Highly agitated,   Defendant

Mossbrooks stated that he and Special Agent Joy had taken separate cars to Plaintiff's home, and that if Plaintiff did not confess, Detective Mossbrooks would take him to a place where he could beat the Plaintiff without anyone knowing. Plaintiff refused to admit to something he had not done and he repeatedly asked the officers to stop terrifying him.  Plaintiff was frightened and upset by the manner in which Joy and Mossbrooks conducted themselves and he felt he was in physical danger.  As a result of defendant Joy and Mossbrooks's actions, Plaintiff suffered from extreme emotional distress causing his PTSD symptoms to skyrocket.

22.     Defendants Mossbrooks and Joy detained Plaintiff in his home against his will.  They interrogated him for approximately three hours and refused to stop even when Plaintiff asked.  They had no arrest or search warrant, and the search they conducted of Plaintiff 's home far exceeded the scope of his consent, which was limited to a search for weapons he did not possess.  Throughout all of this, Defendants Mossbrooks and Joy were well aware that Plaintiff had been diagnosed with PTSD and that his military service had left him 100 percent disabled.  In fact, their techniques were intentionally designed to exacerbate Plaintiff's PTSD symptoms, and they did so.

23.     The following day, Defendants Mossbrooks and Joy returned to Plaintiff's home.  Additional unidentified officers and multiple Los Angeles County Sheriff's Department deputies accompanied them.  The officers intended to arrest Plaintiff based upon a warrant they obtained, falsely accusing Plaintiff of having made a threatening phone call to Defendant Dea and stealing drugs from the VA pharmacy.  When Plaintiff opened his door to the officers, Defendant Mossbrooks pushed him to the floor.  Kneeling over him, Defendant Mossbrooks handcuffed and arrested Plaintiff.  Defendant Mossbrooks had no basis for throwing Plaintiff to the floor, as he was fully cooperative and posed no threat to the officers.  At no point did Plaintiff resist being arrested or handcuffed.  Plaintiff specifically asked if he could take his critical psychiatric medications, but

Defendant Mossbrooks refused to let him take the medications there or take them with him to jail.

24.     Officers took Plaintiff to the jail at the Long Beach Police Department, but jail authorities refused to admit him because his blood pressure was significantly elevated.  This was due to the fact that Defendants terrified Plaintiff's PTSD mental condition with their behavior, and that someone was falsely accusing Plaintiff of a crime.  Officers then took Plaintiff to the VALB hospital to stabilize his blood pressure.  By the time he got there, his blood pressure was still elevated but not life threatening.  Plaintiff asked a VA emergency room doctor for at least one dose of his daily critical psychiatric medication because he had not taken it yet that day, but the doctor refused.  His VA doctors had cautioned Plaintiff that he should never stop taking his psychiatric medications abruptly because it could be life threatening.  This caused Plaintiff even more anxiety.

25.     Officers took Plaintiff to the Twin Towers Correctional Facility in Downtown Los Angeles, where an intake team booked and admitted him.  There, Plaintiff repeatedly asked to see a doctor, and for access to his psychiatric medications.   Despite these requests, no doctor or other medical professional visited Plaintiff during his detention.  Nor did anyone give Plaintiff his medications for PTSD or his other numerous medical problems.  Without his critical psychiatric medications, Plaintiff suffered severe anxiety, nausea, diarrhea, dehydration, vomiting, and severe cluster type migraine headaches due to his PTSD and other medical conditions.  Plaintiff was unable to sleep the entire time he was detained because,  without his critical Psychiatric medications, Plaintiff cannot sleep.  This is documented in Plaintiff's VA medical records.

26.     On Sunday, Plaintiff's sister was able to post bail for Plaintiff, at great expense, to end his ordeal and give him access to the medications he so desperately needed.  Though the medications tempered his symptoms, Plaintiff began to suffer

COMPLAINT FOR DAMAGES

1 PTSD and other medical symptoms to a greater degree and with more frequency

2 than he did before the above-described ordeal.

3     27.    These false charges forced Plaintiff to hire a lawyer and pay that

4 lawyer a substantial fee.  At all times Plaintiff denied that he had engaged in any

5 wrongdoing whatsoever.

6     28.    On August 21, 2014, the Honorable Arthur Jean Jr. held a preliminary

7 hearing in Los Angeles Superior Court in Long Beach to determine whether

8 Plaintiff should stand trial for making "terrorist" threats under Penal Code §

9 422(a).  After hearing the testimony of Defendant Dea - the pharmacist who had

10 assisted Plaintiff on April 9, 2014 - concerning the statements Plaintiff allegedly

11 made, Judge Jean dismissed the charges.  According to Judge Jean, Plaintiff's

12 alleged words did not amount to a "terrorist" threat, whether or not he said them.

13     29.    On his way out of the courtroom, Plaintiff passed a room where

14 witnesses for the prosecution sat.  He recognized his VA doctor in the room, but

15 made no gesture and said nothing to anyone in or near the room.  Plaintiff was

16 simply walking out of the courthouse.  As Plaintiff walked out, Defendant

17 Mossbrooks, ran after Plaintiff, unprovoked, got right behind him and in a very

18 threatening and angry tone said, "Don't stare at my witnesses. This ain't over. I'm

19 going to fucking get you."  Plaintiff did not respond to this statement and

20 continued walking out of the building.

21     30.    The next day, August 22, 2014, Defendants ramped up their campaign

22 against Plaintiff by refiling precisely the same "terrorist threat" charges, without

23 cause, that Judge Jean had dismissed the day before.  Only now, there was an

24 additional false charge of witness intimidation.  Defendants obtained an arrest

25 warrant on Friday August 22, 2014, but did not arrest Plaintiff until the following

26 Thursday afternoon, August 28, 2014.  They did this so Plaintiff would have to

27 spend the entire Labor Day weekend in detention, this time at the Long Beach

28 Police Department.

COMPLAINT FOR DAMAGES

31.     Once again Plaintiff was denied access to critical medications and care and, as a result, suffered the same agonizing symptoms of PTSD and his other medical conditions as he did during his April, 2014 detention.  Once again, his sister was forced to post bail over the weekend to end his ordeal.  In fact, because of the witness intimidation charges, this time the amount of bail was dramatically increased by an additional $100,000.00.  The additional false charge forced Plaintiff to spend a substantial amount of additional money to continue to retain a criminal lawyer to represent him in these renewed proceedings.  Defendants Mossbrooks and Joy added this false witness intimidation charge with the intent that Plaintiff not be able to post bail and would be forced to suffer a long period of detention, up to six days without his critical psychiatric medicines – Thursday to Tuesday – as they had threatened all along.

32.     Defendant Dea works as a pharmacist at the VALB.  She is the pharmacist who helped Plaintiff obtain his needed medication in April 2014.  The interaction between Plaintiff and Defendant Dea was pleasant, and Plaintiff did not say one negative word toward Defendant Dea or anyone else.  However, he did complain about the way her colleagues in the pharmacy had treated him, including hanging up on him more than once and refusing to help him get his medications.  At no point did Plaintiff utter any words that any reasonable person could possibly construe as a "threat" to Defendant Dea, Dr. Merchant, or anyone else.

33.     The VA has policies and procedures to identify veterans who may pose a threat.  When a veteran is found to pose a threat, the VA puts a "Patient Record Flag" ("PRF" or "flag") in their records.  All VA employees, including pharmacists and VA police, can access these records electronically.  Unbeknownst to Plaintiff, there was a flag in his file relating to a 2010 San Antonio, Texas incident in which a VA employee claimed Plaintiff made a threat.  Kyle, Texas police officers visited Plaintiff about this report and found Plaintiff posed no threat.  As far as Plaintiff was aware, the matter ended there and was assured that this was

the case by Walt Dannenberg, a VA supervisor.  In fact, Plaintiff's medical records were flagged and the flag was never removed even though it was supposed to be removed in 2012 by its own terms.  At the bottom of the flag was the admonition, "This flag shall be removed August 2012."  Defendant Dea relied on this "flag" to make the false claims against Plaintiff that led to his false arrest.

34.    The VA's behavioral flag policy specifically precludes any flag from being used for law enforcement purposes.  The VA designed the flag procedure for treatment purposes and requires VA personnel to go through a variety of steps with safeguards for veterans.  Because none of those steps occurred in the context of the 2010 incident, the VA violated its own policies and procedures by letting the 2010 flag remain in Plaintiff's records.  No VA employee could believe the existence of a flag justified making allegations of "terrorist" threats against a veteran patient at a VA facility, and the VA's own policies specifically prohibited making allegations on this basis.

35.    As a pharmacist, Defendant Dea had access to Plaintiff's medical and psychological records, including the 2010 flag which remained on his records improperly under the applicable directive.  Given her testimony at the preliminary hearing in August 2014, it is apparent that Defendant Dea used Plaintiff's VA records for a prohibited purpose and pretended Plaintiff made threatening statements in 2014.  She provided knowingly false information to the VA law enforcement officers and prosecutors, and caused Plaintiff's false arrest, malicious prosecution, and injuries as described in this complaint.

36.    Defendants Joy and Mossbrooks also knew the information from Plaintiff's 2010 flag, could not be used for law enforcement purposes.  Despite this knowledge, they purposefully took steps to have Plaintiff arrested without justification and made false statements to the District Attorney's Office, causing prosecutors to initiate and then reinitiate malicious criminal proceedings against Plaintiff.  Defendant Mossbrooks also lied to prosecutors when he informed them

that Plaintiff intimidated prosecution witnesses at the August 2014 preliminary hearing.  He made these false statements and other false statements (e.g that Plaintiff had stolen medications from the VALB pharmacy) solely to ensure Plaintiff would be falsely arrested, prosecuted, and suffer unnecessary imprisonment.  After the terrorist threat charges of April 2014 were dismissed, as Plaintiff walked by the room where additional prosecutorial witnesses were seated, Defendant Mossbrooks ran aafter Plaintiff and told him, "Don't stare at my witnesses. This isn't over. I'm gonna fuckin' get you."

37.    The District Attorney's Office never charged Plaintiff with witness intimidation, but Plaintiff was nevertheless forced to post a $100,000.00 bond for the charge.  In May 2015, the renewed "terrorist threat" charge was dropped with prejudice in the interests of justice without the case ever being presented to another preliminary hearing.

## FIRST CLAIM FOR RELIEF
### (VIOLATIONS OF THE PRIVACY ACT)
### (Against Defendants VA and Fisher)

38.    Plaintiff incorporates paragraphs 1 to 37 herein as though set forth in full.

39.    This claim is against Defendant VA for violation of the Privacy Act, as amended, 5 U.S.C.A. § 552a ("Privacy Act").

40.    All of Plaintiff's confidential medical records, including the information contained in them and any derivative information, are maintained in Privacy Act systems of records maintained by the VA.  The Privacy Act protects these records from unauthorized disclosure.

41.    Defendant VA, through its officials, agents, and/or employees, intentionally and/or willfully failed to properly maintain the contents of records maintained in Privacy Act systems of records, pertaining to Plaintiff, including but not limited to the Patient flags.  This was in contravention of the VA's own

1  regulations and internal policies and in violation of federal regulations and the
2  Privacy Act.

3       42.    Defendant VA, and its officials, agents and/or employees, made no
4  effort to assure the accuracy, completeness, timeliness or relevance of the
5  aforementioned records about Plaintiff in violation of the Privacy Act.  In fact, VA
6  officials in San Antonio, Texas, knew the 2010 flag was based on erroneous
7  information and assured Plaintiff that his records would be corrected.  Instead, the
8  2010 flag was improperly maintained without Plaintiff's knowledge in violation of
9  the Privacy Act.  The flag was maintained past 2012 in violation of the VA's own
10  policy.

11       43.    Defendant VA's violations of the Privacy Act with respect to
12  Plaintiff's confidential medical records are ongoing and continuing.

13       44.    As a direct and proximate result of these violations of the Privacy Act
14  and Defendant VA's intentional and willful failures to amend the contents of
15  records pertaining to Plaintiff maintained in record systems covered by the Privacy
16  Act, harms to Plaintiff have occurred.  Such failures by Defendant VA constitute a
17  violation of Plaintiff's rights under the Privacy Act, and are the direct and
18  proximate cause of the damages Plaintiff suffered starting in April 2014, as
19  described herein.

20       45.    As a direct and proximate cause of each of the above-referenced
21  intentional and willful violations of the Privacy Act of 1974 by Defendant VA,
22  Plaintiff has suffered an "adverse effect," as defined in 5 U.S.C.A., §
23  552a(g)(1)(D), including but not limited to direct and indirect injury to Plaintiff's
24  reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset,
25  mental anguish, physical pain and suffering, damage to his career and professional
26  reputation, out-of-pocket pecuniary losses, inconvenience and unfairness, and fear
27  of further violations of Plaintiff's privacy rights by the VA.
28

COMPLAINT FOR DAMAGES

46.     As a direct and proximate cause of each of the above-referenced intentional and willful violations of the Privacy Act by defendant VA, Plaintiff has suffered damages including, but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, mental anguish, physical pain and suffering, and damage to his career and professional reputation. Plaintiff's damages are ongoing and continuing.

## SECOND CLAIM FOR RELIEF

### (FOURTH AMENDMENT VIOLATION: FALSE ARREST)

### (Against Defendants Joy, Mossbrooks and Dea)

47.     Plaintiff incorporates paragraphs 1 to 46 herein as though set forth in full.

48.     This claim against Defendants Dea, Mossbrooks and Joy for false arrest in violation of Plaintiffs' Fourth Amendment rights is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

49.     At all times herein mentioned, Defendants Mossbrooks and Joy, as agents acting under the color of federal law, were obligated to comply with the Fourth Amendment to the United States Constitution, including freedom from unreasonable search and seizure and false arrest.

50.     Defendants Dea, Joy and Mossbrooks knew that Plaintiff had not uttered "terrorist" threats or, any threats.  At most, Plaintiff expressed criticism of the rude treatment he received from other personnel in the Pharmacy at the VALB. Despite knowing Plaintiff had committed no crime, these defendants conspired to present false charges to prosecutors in order to obtain an arrest warrant and file false criminal charges against Plaintiff.

51.     Defendants Dea, Mossbrooks, and Joy acted as complaining witnesses in the warrant issuance process and, through acts or omissions, caused a warrant to

COMPLAINT FOR DAMAGES

1  be issued for Plaintiff's arrest in April 2014 despite a lack of probable cause.  Their

2  actions led to Plaintiff's false arrest in April 2014 and rearrest in August 2014.

3       52.    Again, in August, 2014, Defendants Dea, Mossbrooks and Joy, acting

4  as complaining witnesses, caused a warrant to be issued for Plaintiff's arrest by,

5  inter alia, fabricating witness intimidation charges.  Police officers arrested

6  Plaintiff the next week on allegations of witness intimidation and making a terrorist

7  threat.  Again, there was no basis upon which the Defendants could have

8  reasonably believed Plaintiff had committed the crimes with which he was

9  charged.

10       53.    Plaintiff experienced extreme mental distress when police officers

11  denied him his critical psychiatric medications, and was twice embarrassed when

12  police officers arrested him without probable cause and publicly transported him to

13  jail.  Plaintiff suffered financially in having to post bail twice after being arrested

14  and detained without probable cause.  Plaintiff suffered physically when police

15  officers used excessive force to throw him to the floor during his first arrest, and

16  when those officers denied him medical care during each false arrest.  Plaintiff is

17  thus entitled to compensatory and punitive damages in accordance with proof at

18  trial.

19

20

21

22

23                     **THIRD CLAIM FOR RELIEF**

24          **(FOURTH AMENDMENT VIOLATION: UNREASONABLE AND**

25                       **EXCESSIVE USE OF FORCE)**

26                  **(Against Defendants Joy and Mossbrooks)**

27       54.    Plaintiff incorporates by reference each and every allegation contained

28  in paragraphs 1 through 53 herein as though set forth fully herein.

55.     This claim is against Defendants Mossbrooks and Joy for unlawful detention in violation of Plaintiffs' Fourth Amendment right to freedom from unreasonable search and seizure, which includes the right to be free from unreasonable and excessive force during search and seizure.

56.     Defendants Mossbrooks and Joy were, at all times referenced herein, acting under the color of federal law.

57.     Officers arrived at Plaintiffs house on April 11, 2014 and announced themselves through the door.  Plaintiff responded that he needed to put on pants and would then exit peacefully.  At that point, Defendant Mossbrooks threatened to shoot Plaintiff.

58.     Defendants Mossbrooks and Joy knew from their search and interrogation the previous day, and from Plaintiff's VA files, that Plaintiff had no guns, suffered from mental and physical disabilities, and was not a threat to the safety of Defendants or others.

59.     When Plaintiff opened the door to his home, Defendant Mossbrooks rushed in and pushed Plaintiff to the floor, harshly twisting his arms back behind his back.  Despite being able, other officers did nothing to prevent Defendant Mossbrooks from using excessive force against Plaintiff.

60.     As a direct proximate result of Defendants' use of excessive force, Plaintiff suffered physical and emotional injuries entitling Plaintiff to compensatory and punitive damages in accordance with proof at trial.

## FOURTH CLAIM FOR RELIEF

### (VIOLATION OF FOURTH AND FIFTH AMENDMENT RIGHTS: MALICIOUS PROSECUTION)

#### (Against Defendants Joy, Mossbrooks and Dea)

61.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 60 as if set forth fully herein.

COMPLAINT FOR DAMAGES

62.     This claim is against Defendants Mossbrooks and Joy for malicious prosecution and abuse of authority in violation of Plaintiff's Fourth and Fifth Amendment rights.

63.     Defendants Dea, Mossbrooks, and Joy acted as complaining witnesses in order to obtain an arrest warrant from the Los Angeles Superior Court and convince the Los Angeles District Attorney's Office to prosecute Plaintiff for felony "terrorist" threats, despite knowing Plaintiff had made no such threats. Assistant District Attorney Vance Davis charged Plaintiff with making "terrorist" threats and later with witness intimidation.  Mr. Davis initiated this prosecution based entirely on the false statements these Defendants made.   Defendants made these statements and initiated the prosecution maliciously in order to cause Plaintiff harm.  For example, Defendant Mossbrooks, accosted the Plaintiff and threatened, "Don't stare at my witnesses. This ain't over. I'm gonna fuckin get you."

64.     Judge Jean dismissed all charges against Plaintiff with prejudice in May 2015.  The District Attorney's office never pursued the witness intimidation charges, and Plaintiff has received a favorable termination of all other charges against him.

65.     No probable cause existed for either the "terrorist" threat or witness intimidation charges, a fact Defendants knew from the beginning.  Moreover, on August 21, 2014, Judge Jean ruled the charges had no merit.  Defendants knew these charges were refiled maliciously and were intended to "get" Plaintiff, as Defendant Mossbrooks promised, with no legitimate basis for doing so.

66.     As a direct, proximate result of Defendants' acts and omissions, Plaintiff has suffered physical, emotional and financial injuries, entitling Plaintiff to compensatory and punitive damages in accordance with proof at trial.

67.     Plaintiff suffered harm in the form of economic hardship when he was forced to pay excessive bail and legal fees due to the additional witness

COMPLAINT FOR DAMAGES

1   intimidation allegation.  He also suffered physical hardship as he was denied

2   medical care again while wrongly incarcerated.

### FIFTH CLAIM FOR RELIEF

### (ABUSE OF PROCESS IN VIOLATION OF FOURTH AND

### FIFTH AMENDMENTS)

#### (Against Defendants Joy, Mossbrooks and Dea)

7   68.   Plaintiff incorporates by reference each and every allegation contained

8   in paragraphs 1 through 67 as if set forth fully herein.

9   69.   Defendants Mossbrooks and Joy misused their authority for the

10  purpose of causing Plaintiff misery and emotional distress.  Initially, these

11  Defendants did so by interrogating Plaintiff in an intimidating and demeaning way

12  intended to cause him humiliation and intense emotional distress.  These

13  Defendants then abused the first arrest warrant by enforcing it in a manner

14  designed to cause Plaintiff the maximum degree of physical and emotional distress.

15  70.   After Judge Jean, at Plaintiff's August 21, 2014 preliminary hearing,

16  found Plaintiff to have committed no crime, Defendants Mossbrooks and Joy

17  compounded their abuse of process by causing "terrorist threat" charges to be

18  refiled without cause.  They did this the next day, without cause, even though

19  Judge Jean had found that Plaintiff had not committed any criminal act in his call

20  to Ms. Dea.  Moreover, although they obtained an arrest warrant on April 22, 2014,

21  these Defendants intentionally waited to arrest Plaintiff until Thursday afternoon

22  August 28, 2014, right before the Labor Day weekend, so that Plaintiff would

23  spend more time in custody.  Indeed, Defendants held Plaintiff at the VALB until

24  after normal business hours on August 28, 2014, to ensure Plaintiff would have to

25  endure imprisonment over the weekend, up to six days.  Moreover, as part of this

26  scheme to punish Plaintiff, these Defendants manufactured a false witness

27  intimidation charge so that Plaintiff's bail would be set at an amount that prevented

28  him from obtaining bail over the weekend.

COMPLAINT FOR DAMAGES

71.     These abuses of Defendants' official authority amount to abuse of process in violation of the Fourth and Fifth Amendments.

72.     As a direct proximate result of Defendants' acts and omissions, Plaintiff has suffered physical, emotional, and financial injuries entitling Plaintiff to compensatory and punitive damages in accordance with proof at trial.

73.     Plaintiff suffered harm in the form of economic hardship when he was forced to pay excessive bail due to the additional witness intimidation allegation. He also suffered physical hardship, as he was again denied medical care while wrongly incarcerated.

**SIXTH CLAIM FOR RELIEF**

**(VIOLATIONS OF THE REHABILITATION ACT OF 1973)**

**(Against Defendants VA and Fisher)**

74.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 73 as if set forth fully herein.

75.     Plaintiff brings this claim against Defendant VA pursuant to 29 U.S.C. § 701.

76.     At all relevant times, Plaintiff was a qualified individual with a disability under the Rehabilitation Act. See 29 U.S.C. § 705(20).  The Department of Veterans' Affairs rates Plaintiff's service connected disability at 100 percent due to severe, chronic PTSD.  A 100 percent rating for a mental disorder requires complete occupational and social impairment.  38 C.F.R. § 4.130.  Plaintiff also suffers from other service connected disabilities, including diseases caused by VA's failure to treat Plaintiff's PTSD for more than thirty years.

77.     Defendant VA is a federal agency and thus covered by Section 504. See 28 C.F.R. § 42.540.  Under Section 504, Defendant VA must reasonably accommodate persons with disabilities in their program activities and services, and reasonably modify those programs and services to accomplish this purpose.

COMPLAINT FOR DAMAGES

78.     The Rehabilitation Act brings within its scope "anything a public entity does."  28 C.F.R. §35.102.  Defendant VA's provision of medical care, as well as its investigation and arrest of Plaintiff, constitute programs and services for purposes of Section 504.

79.     Plaintiff was denied the benefit of medical care solely because of his disability, within the meaning of the Rehabilitation Act.  In addition, he was denied access to his long-time primary care doctor, Dr.  Merchant, at the VALB because of the discriminatory actions and failure to accommodate described throughout this complaint.

80.     At all times relevant here, Plaintiff's mental illness was well known to Defendant VA and its officials and employees.  Specifically, Defendants knew that Plaintiff suffers from debilitating PTSD and other related physical disabilities.

81.     Defendant VA discriminated against Plaintiff by failing to reasonably accommodate his mental illness.  Specifically, Defendants Mossbrooks and Joy used threats, accusations, intimidation, and false statements during their investigation and arrest of Plaintiff.  In doing so, Defendants Mossbrooks and Joy acted with deliberate disregard for Plaintiff's severe PTSD by knowingly, willfully, and/or recklessly using investigative techniques that aggravate the symptoms of PTSD.

82.     Because there were no exigent circumstances, Defendants Mossbrooks and Joy could and should have reasonably accommodated Plaintiff by using investigative techniques that would not aggravate the symptoms of PTSD.  For example, abstaining from using threats of violence or intimidation would have accommodated Plaintiff's disabilities.

83.     Defendants Mossbrooks and Joy's failure to take Plaintiff's severe PTSD into account or employ proper police practices for investigating a person with a mental illness constitutes intentional discrimination and deliberate

COMPLAINT FOR DAMAGES

indifference for which Defendant VA is vicariously liable under the Rehabilitation Act.

84.     Such accommodation of the Plaintiff's disability would not constitute an undue burden requiring "a fundamental alteration in the nature of a service, program, or activity or in undue financial or administrative burdens." See 28 C.F.R. § 35.150(a)(3).

85.     Defendant VA had a duty to make reasonable accommodations to its investigation, arrest, and use of force procedures when confronting a person with a disability, such as Plaintiff, including, inter alia, providing specialized training to VA police officers for investigating persons that are mentally disabled.

86.     Defendant VA failed to train, supervise, and/or discipline its police officers, and/or DOES 1-10, regarding the appropriate investigation and arrest procedures for confronting a person with a severe mental illness.  Defendant VA provides medical care for veterans, many of whom are mentally or physically disabled.  Defendant VA's police officers work exclusively in a health care environment, and its failure to train, supervise, or discipline its police officers regarding interacting with persons suffering from mental illness constitutes deliberate indifference.

87.     As a direct and proximate result of Defendant VA Long Beach's unlawful conduct, Plaintiff suffered, and continues to suffer, an extreme increase in anxiety, mental anguish, emotional distress, and aggravation of his PTSD.

88.     Defendant VA is vicariously liable for the acts of its officers.

89.     Plaintiffs are entitled to recover reasonable attorneys' fees under 29 U.S.C. § 794a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

90.     Damages, subject to proof and in an amount to be determined at trial, for violating Plaintiff's rights under the Privacy Act, including, but not limited to,

COMPLAINT FOR DAMAGES

actual and out-of-pocket damages, including, but not limited to compensatory damages for, *inter alia*, harm to reputation, embarrassment and humiliation, and damage to Plaintiff's career;

91.     Damages in an amount not less than $1,000 for each and every violation of the Privacy Act;

92.      On the constitutional claims for relief, the award of general and compensatory damages against all Defendants, jointly and severally, in an amount according to proof at trial;

93.     The award of punitive and exemplary damages against all individual Defendants sued in their individual capacities in an amount to be proven at trial;

94.     The award of any and all other damages allowed by law according to proof to be determined at time of trial in this matter;

95.     Injunctive and declaratory relief against Defendant Fisher adequate to ensure that the VA's policies and practices and the safeguards of the U.S. Constitution are followed at the VALB.

96.     The award of costs of suit and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(a); the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Privacy Act of 1974, 5 U.S.C. § 552a.

97.     The award of such other relief as the court deems just and proper.

Dated: November  10, 2015

                         SCHONBRUN  SEPLOW
                         HARRIS & HOFFMAN, LLP


                   By:    s/ Paul L. Hoffman
                         Paul Hoffman
                         Attorneys for Plaintiff
                         Nolan Lewis

COMPLAINT FOR DAMAGES

1

**DEMAND FOR JURY TRIAL**

2
Plaintiffs hereby respectfully demand that a trial by jury be conducted with respect

3
to all issues presented herein.

4

5
Dated: November  10, 2015

6
                                                    SCHONBRUN  SEPLOW
                                                    HARRIS & HOFFMAN, LLP

7

8
                                    By:    s/ Paul L. Hoffman

9
                                           Paul Hoffman
                                           Attorneys for Plaintiff

10
                                           Nolan Lewis

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

23
COMPLAINT FOR DAMAGES