**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **CV 15-08756-JFW (Ex)** | Date: October 26, 2017 |

Title:      Nolan Lewis -v- William Mossbrooks et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFF:**         **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                                                    None

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING DEFENDANT MABEL DEA'S MOTION FOR SUMMARY JUDGMENT [filed 9/25/17; Docket No. 114]

On September 25, 2017, Defendant Mabel Dea ("Dea") filed a Motion for Summary Judgment. On October 1, 2017, Plaintiff Nolan Lewis ("Plaintiff") filed an Opposition. On October 10, 2017, Defendant filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's October 23, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**[1]

Plaintiff is a veteran who served in the United States Army during the Vietnam War. After returning from combat, he was diagnosed with post-traumatic stress disorder ("PTSD") and exposure to Agent Orange. In 2004, Plaintiff was classified as one hundred percent disabled and began receiving medical and psychological services from the Veteran's Administration ("VA"). He has received medial, dental, and mental health care treatment from the VA Medical Center in Long Beach, California since 2012.

---

[1] The facts in this case are largely undisputed. The Court has considered the facts in the light most favorable to the nonmoving party, and to the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court overrules those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

Dea works in the pharmacy at the Long Beach VA Medical Center. On April 9, 2014, Plaintiff left two messages for the pharmacy complaining about his prescriptions. After listening to the messages, Dea returned Plaintiff's call. Plaintiff was extremely angry during the call and vehemently complained about the poor quality of the pharmacy, the VA medical staff, and his medical care provider. Despite his anger, Dea was able to resolve Plaintiff's issues with his prescriptions and arranged for him to pick them up at the pharmacy the following day.

According to Dea, towards the end of the call, Plaintiff said, "I have PTSD and anger issues. This is what makes me mad. I am going to shoot Dr. Merchant and everyone else." As a result of Plaintiff's threat, Dea feared for her safety and the safety of other VA employees, including Dr. Merchant. Immediately after the call, Dea reported Plaintiff's statement to her supervisor, who directed her to report the incident to the VA Police Department (the "VAPD"). Her supervisor also instructed her to notify Dr. Merchant about the threat. Dea complied and contacted both the VAPD and Dr. Merchant. At her supervisors' direction, Dea prepared an e-mail outlining the details of her call with Plaintiff.

The VAPD prepared an Investigative Report, which included statements from Dea and Fulgene Macaba, a Registered Nurse who worked with Dr. Merchant. On April 10, 2014, VAPD Detective William Mossbrooks ("Mossbrooks") and VA Office of Inspector General Special Agent Chad Joy ("Joy") (collectively, the "Officers") interviewed Dea regarding the incident. Dea advised the Officers that Plaintiff had left two messages with the pharmacy before she spoke to him. According to Dea, Plaintiff was angry and upset because they had terminated his prior calls, and he was upset with Dr. Merchant because his medications were "screwed up." Dea also stated that Plaintiff threatened to shoot Dr. Merchant. Dea advised the Officers that Plaintiff's comments scared her because he was so angry.

On April 10, 2014, the Officers interviewed Plaintiff at his residence. Plaintiff told the Officers that a VA pharmacy employee hung up on him twice but that he can be "an asshole and rude." Plaintiff recalled speaking with Dea but denied that he threatened to shoot Dr. Merchant. According to Plaintiff, he told Dea "I just want to slap something." Plaintiff told the Officers he did not have a gun or anything to hide and permitted the Officers to search his residence.

On April 11, 2014, Joy completed a Case Authorization/Comprehensive Report of Investigation for presentation to the Los Angeles County District Attorney's Office (the "DA's Office"). The DA's Office reviewed the report and decided to charge Plaintiff with one count of violating Penal Code Section 422 (Criminal Threats). That same day, Joy presented a Felony Complaint for Arrest Warrant to a Los Angeles Superior Court judge, who found there was probable cause to issue the arrest warrant.

The Officers, along with other law enforcement agents, arrested Plaintiff on the evening of April 11, 2014 at his residence. Before leaving his house, Plaintiff asked if he could take his medications with him. According to Mossbrooks, he told Plaintiff that no jail would allow him to bring in his own medications, but he could take a list of the medications with him. The Officers then transported Plaintiff to the Long Beach City Jail. When Plaintiff arrived, a nurse determined that Plaintiff's blood pressure was high and Plaintiff was transported to the VA Medical Center Long Beach Emergency Room for medical clearance. Plaintiff was medically cleared by the VA medical staff that same evening and the Officers transported Plaintiff to the Inmate Reception

Center in Los Angeles for booking.  On April 12, 2014, Plaintiff was released from custody after his sister posted his bail.

On May 2, 2014, Plaintiff was arraigned in Superior Court and entered a plea of not guilty On August 21, 2014, Plaintiff appeared for a preliminary hearing.  At the hearing, Dea testified that Plaintiff said, "I just want to go shoot Dr. Merchant and everyone else" which differed slightly from her original statement that Plaintiff said, "I am going to shoot Dr. Merchant and everyone else." The Superior Court judge determined that there was insufficient evidence that Plaintiff "threatened to commit a crime with the specific intent of the statement made verbally to be taken as a threat." Accordingly, the Superior Court judge dismissed the charge.

When Plaintiff left the courtroom after the preliminary hearing, he passed a witness room where Dea, Dr. Merchant, and the Officers were seated.  According to Dea, Plaintiff walked to the glass window of the door to the room and stared at them.  Both Dea and Dr. Merchant felt uncomfortable and nervous as a result of Plaintiff's action.  Following the incident, the Officers went to the DA's Office to discuss whether the DA's Office should re-file the charge against Plaintiff.

On August 22, 2014, the DA's Office re-filed a Complaint against Plaintiff with the identical charge that had been dismissed by the Court.  The new Complaint was presented to a Superior Court judge who determined that there was probable cause to file the charge and issued a second arrest warrant.  After the second warrant was issued, a meeting was held to determine where and when to arrest Plaintiff.  It was determined that it would be best for Plaintiff to be arrested during his next medical appointment at the VA Medical Center.  Accordingly, on August 28, 2014, Plaintiff was arrested at the VA Medical Center, without incident.  On August 29, 2014, a Superior Court judge determined that there was probable cause to believe Plaintiff committed the crime charged, and he was ordered to stand trial.  Plaintiff was subsequently released on bail.

On November 4, 2014, Plaintiff's counsel requested, and the court agreed to continue his case for six months because of an agreement Plaintiff had reached with the DA's Office.  *See* Ex. 59 at 1052:7–10.  Pursuant to the parties' agreement, Plaintiff was ordered to continue in counseling with his VA doctors for six months and if there were no issues, the DA's Office would agree to dismiss the case.  On May 4, 2015, the Superior Court judge confirmed that Plaintiff had not been arrested and had no other contact with law enforcement during the past six months and that he had completed his counseling treatment.  Accordingly, the Court granted the DA's Office's motion to dismiss the charge pursuant to the parties' agreement.

On November 10, 2015, Plaintiff filed this lawsuit.  On March 8, 2017, he filed his Second Amended Complaint, asserting claims against Dea, Mossbrooks, Joy, the United States of America, the VA, and David Shulkin, the Secretary of the VA (collectively, "Defendants").  Plaintiff brings three claims against Dea: (1) false arrest; (2) malicious prosecution; and (3) abuse of process.  Dea moves for summary judgment as to each of Plaintiff's claims.

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *Am. Int'l Group*, 926 F.2d at 836–37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.    Discussion

### A.     False Arrest

Under California law, false arrest and false imprisonment are the same torts—[f]alse arrest is but one way of committing false imprisonment." *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1158 (C.D. Cal. Jan. 12, 2010) (citing *Agasi v. City of Los Angeles*, 15 Cal. 4th 744, 752 (1997)) (internal quotation marks omitted). A plaintiff asserting a claim for false arrest must prove: (1) he was intentionally confined without his consent; (2) the confinement was without lawful privilege; and (3) the confinement was for an appreciable period of time, however brief. *See id.*

Dea contends that Plaintiff's false arrest clam against her fails as a matter of law because she is entitled to absolute immunity. "Witnesses . . . are accorded absolute immunity from liability for their testimony in judicial proceedings." *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir.

2001).  The "purpose of such immunity is to encourage witnesses to come forward and speak freely in court by relieving the potential defendant of any fear that he will later have the burden of litigating the propriety of his conduct as a witness."  *Id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 336–36 (1983)).  Witness immunity applies to testimony offered in sworn statements and in pretrial proceedings.  *Burns v. Cnty. of King*, 883 F.2d 819, 823 (9th Cir. 1989) (citing *Briscoe*, 460 U.S. 325); *see also Gray v. Poole*, 275 F.3d 1113, 1118 (D.C. Cir. 2002) ("It does not matter whether [a witnesses'] sworn statement was given in oral or written form; what matters is that her statement was the equivalent of sworn testimony in a judicial proceeding.").

Plaintiff argues that absolute immunity does not shield Dea from liability because she is a complaining witness—i.e., an individual whose allegations resulted in Plaintiff's prosecution—and absolute immunity does not extend to a complaining witness.  *See Malley v. Briggs*, 475 U.S. 335 (1986); *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1243 n.3 (9th Cir. 2015).  In *Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012), the Supreme Court explained that the term "complaining witness", as used in the Court's previous jurisprudence, refers "to a party who procured an arrest and initiated a criminal prosecution."  *See also Malley*, at 340 (a complaining witness "procure[s] the issuance of an arrest warrant by submitting a complaint."); *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992) (a complaining witness "set[s] the wheels of government in motion by instigating a legal action.").  The Court also specifically refused to expand the term complaining witness to include "someone who sets the prosecution in motion" and re-iterated that the term only includes those who are actually responsible for deciding to prosecute an action.  *Id.* at 372–73.

It is clear from the record that Dea is not a complaining witness and enjoys absolute immunity from liability for any tort claim stemming from her testimony.  Although she provided information that led to a criminal charge against Plaintiff, there is no evidence that she had any responsibility whatsoever for deciding whether to bring charges against him.  *See Rehberg*, 566 U.S. at 367–368 (a witness who testifies at a grand jury "is not at all comparable to a complaining witness" because the witness does not "perform the function of applying for an arrest warrant [or] . . . make the critical decision to initiate a prosecution.").  Moreover, even if Dea's statements about Plaintiff were false (as Plaintiff claims) Dea is still shielded by the absolute immunity doctrine.  *Id.* at 369 (explaining that a witness's entitlement to absolute immunity "may not be circumvented" by claiming the witnesses' testimony was false).  Accordingly, the Court concludes that Dea is entitled to summary judgment on Plaintiff's false arrest claim.

### B. Malicious Prosecution

To prevail on a claim for malicious prosecution under California law, a plaintiff must prove that the defendant commenced or directed a proceeding to be brought against the plaintiff that was: (1) terminated in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice.  *Womack v. Cnty. of Amador*, 551 Supp. 2d 1017, 1031 (E.D. Cal. 2008) (collecting cases); *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (1998).  If a plaintiff cannot establish one or more of these elements, his malicious prosecution claim fails.  *StaffPro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1398 (2006).

### 1. There Was No Favorable Termination of the Criminal Action

The favorable termination element "is an essential element of the tort of malicious prosecution, and it is strictly enforced." *Id.* at 1400. This element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Pattiz v. Minye*, 61 Cal. App. 4th 822, 826 (1998). A termination is "not necessarily favorable simply because the party prevailed on the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Sagonowsky*, 64 Cal. App. 4th at 128. "If the resolution of the underlying action leaves some doubt concerning [a] plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Pattiz*, 61 Cal. App. 4th at 826. "The element of favorable termination . . . is a legal question for the [C]ourt to decide." *Womack*, 551 F. Supp. 2d at 1032 (citing *StaffPro*, 136 Cal. App. 4th at 1398).

Plaintiff contends summary judgment should be denied on this claim because the initial charge against him was terminated in his favor and there is a material factual dispute as to whether the second charge was terminated favorably. The Court concludes the outcome of the first charge is not dispositive because the new charge stemming from the identical conduct was re-filed against Plaintiff before he initiated this lawsuit. *See Jaffe v. Stone*, 18 Cal. 2d 146, 156 (1941) (explaining that where criminal charges are dismissed by a judge at a preliminary hearing because the evidence produced against the accused is not sufficient to warrant being held further is a favorable termination and will support a claim for malicious prosecution but if a new proceeding is already instituted against him, the accused can "be precluded from suing for malicious prosecution."); *see also Sierra Club Found. v. Graham*, 72 Cal. App. 4th 1135, 1151 (1999) (stating "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.") (internal citation and quotation marks omitted)). Thus, Plaintiff must also show that the second criminal action was terminated in his favor. The Court concludes that Plaintiff cannot satisfy this burden.

"A termination by dismissal is favorable when it reflects the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant . . . ." *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1056 (2007). "The focus is not on the malicious prosecution plaintiff's opinion of his innocence, but on the opinion of the dismissing party." *Id.* (citing *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 886 (1992)). "The test is whether . . . the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." *Id.*

Plaintiff relies on evidence from his second criminal case file to support his arguments. In the DA's Office's file, a deputy district attorney who worked on Plaintiff's second criminal case noted that he would have filed a misdemeanor charge against Plaintiff rather than a felony. The file also contains a deputy district attorney's response to a Customer Satisfaction Survey from the Office of Inspector General. In response to the question "If you declined prosecution after the preparation of a comprehensive ROI, was it due to:" the deputy district attorney checked the boxes that said "the lack of evidence to substantiate the charge" and "the availability of administrative/other remedies." *See* Pl.'s Ex. 3–4. However, the response to this form is not

helpful to Plaintiff because the DA's Office did not "decline" prosecution. Moreover, this evidence does not demonstrate that the DA's Office's agreement to dismiss the charge against Plaintiff because it thought Plaintiff was innocent or that the action lacked merit. Indeed, the DA's Office's decision to dismiss the charge against Plaintiff was a routine disposition typically used to resolve similar cases without an admission of guilt or innocence as seen from the box checked "availability of other remedies." Accordingly, the Court concludes that Plaintiff cannot demonstrate that the DA's Office's agreement to dismiss the case was a determination on the merits in his favor. *See Cote v. Henderson*, 218 Cal. App. 3d 796, 805 (1990) (finding that a dismissal that results from a plea bargain, an agreement, or a settlement between a criminal defendant the government is not a favorable determination on the merits).

### 2. Prosecutorial Independence Breaks the Casual Chain

In addition, even if Plaintiff could somehow satisfy the favorable termination element, the Court concludes that the DA's Office's decision to prosecute Plaintiff breaks the chain of causation between Dea's actions and any harm Plaintiff suffered. *See Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) ("a prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff."). There is a presumption that a "prosecutor filing a criminal complaint exercised independent judgment in determining that probable cause for an accused's arrest existed thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers from damages suffered after the complaint was filed." *Id.* (citing *Smiddy v. Varney*, 665 F.2d 261, 266–67 (9th Cir. 1981) overruled on other grounds by *Beck*, 527 F.3d at 865).

Plaintiff argues that he has rebutted this presumption by introducing evidence that Dea knowingly made a false statement to law enforcement officers and that she testified falsely. Opp'n 10; *see Beck*, 527 F.3d at 862 (explaining that the presumption of independent judgment is rebutted where evidence shows a prosecutor was pressured by police or was given false information; the police acted maliciously or with reckless disregard for the rights of the accused; the prosecutor relied on the police investigation and arrest when filing the complaint instead of making an independent judgment on the existence of probable cause for the arrest; or the officers engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings). As support for his argument, Plaintiff relies on evidence that Dea repeatedly stated that Plaintiff said something different than what was included in the police report. Plaintiff also points to his own testimony contradicting Dea's statements. Plaintiff's argument is unpersuasive.

It is undisputed that Dea initially reported that Plaintiff said he was going to shoot Dr. Merchant. Later, at the preliminary hearing, Dea testified that Plaintiff said he wanted to shoot Dr. Merchant. Although slightly different, there is no evidence that Dea's testimony varied because she had initially lied about what Plaintiff said. Indeed, she stated that her testimony was different because she was, understandably, nervous on the witness stand. Moreover, although Plaintiff contends he said he wanted to slap someone—not shoot someone—his version does not demonstrate that Plaintiff knowingly provided a false statement about what Plaintiff said. There is simply no evidence in the record that Dea harbored any animus towards Plaintiff or had any incentive to misrepresent his statements to police. In fact, Dea was extremely accommodating in assisting Plaintiff after he had been treated rudely by other VA employees. Plaintiff's testimony

regarding the substance of his statement also fails to rebut the presumption that the prosecutor exercised independent judgment in filing charges because the DA's Office was aware of the fact that Plaintiff's version differed from Dea's at the time it decided to initiate the criminal case. In addition, there is no evidence that the DA's Office failed to independently investigate whether there was probable cause to file the case. Accordingly, Dea is entitled to summary judgment on this claim.

### C. Abuse of Process

A claim for abuse of process arises when an individual uses the court's process for a purpose other than that for which the process was designed. This tort is "interpreted broadly to encompass the entire range of procedures incident to litigation." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 750 (E.D. Cal. 2008) (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (1988)). A plaintiff asserting a claim for abuse of process must prove: (1) the defendant contemplated an ulterior motive in using the process; and (2) the defendant committed a wilful act in using the process not proper in the regulator conduct of the proceedings. "A showing of malice, whether express or implied, is required." *Id.* Abuse of process differs from the torts of malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or mis-applying process justified in itself for an end other than that which it was designed to accomplish.

Plaintiff's abuse of process claim is based on his allegations that Defendants intentionally waited until August 28, 2014 to arrest him because they wanted him to spend the weekend in jail. SAC ¶ 71. Plaintiff further alleges that Defendants manufactured a false witness intimidation charge so that Plaintiff's bail would be set at an amount that would prevent him from securing his release on bond. SAC ¶ 71. Based upon the evidence presented, it is undisputed that Plaintiff was not charged with witness intimidation. Moreover, there is no evidence that Dea was involved in any way with the decision as to the timing of Plaintiff's arrest. Finally, as discussed above, there is absolutely no evidence that Plaintiff harbored any ill will towards Plaintiff or had any motive to falsely accuse him of making a criminal threat. Accordingly, Plaintiff cannot demonstrate that Dea is liable for abuse of process and she is entitled to summary judgment on this issue.

### IV. Conclusion

For all the foregoing reasons, Dea's Motion is **GRANTED** in its entirety.

IT IS SO ORDERED.