**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

<u>**CIVIL MINUTES -- GENERAL**</u>

| | |
|---|---|
| Case No.  **CV 15-08756-JFW (Ex)** | Date: October 26, 2017 |

Title:   Nolan Lewis -v- William Mossbrooks et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFF:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOSSBROOKS AND JOY'S MOTION FOR SUMMARY JUDGMENT [filed 9/25/17; Docket No. 116]

On September 25, 2017, Defendants William Mossbrooks ("Mossbrooks") and Chad Joy ("Joy") (collectively, the "Officers") filed a Motion for Summary Judgment. On October 1, 2017, Plaintiff Nolan Lewis ("Plaintiff") filed an Opposition. On October 10, 2017, Defendant filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's October 23, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.   Factual and Procedural Background**[1]

Plaintiff is a veteran who served in the United States Army during the Vietnam War. After returning from combat, he was diagnosed with post-traumatic stress disorder ("PTSD") and exposure to Agent Orange. In 2004, Plaintiff was classified as one hundred percent disabled and began receiving medical and psychological services from the Veteran's Administration ("VA"). He

---

[1] The facts in this case are largely undisputed. The Court has considered the facts in the light most favorable to the nonmoving party, and to the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court overrules those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

has received medial, dental, and mental health care treatment from the VA Medical Center in Long Beach, California since 2012.  Mossbrooks is a police officer with the VA Police Department ("VAPD").  Joy is a special agent with the Office of Inspector General.

On April 9, 2014, Plaintiff left two messages for the pharmacy complaining about his prescriptions.  After listening to the messages, Mabel Dea, an employee in the VA pharmacy, returned Plaintiff's call.  Plaintiff was extremely angry during the call and vehemently complained about the poor quality of the pharmacy, the VA medical staff, and his medical care provider.  Despite his anger, Dea was able to resolve Plaintiff's issues with his prescriptions and arranged for him to pick them up at the pharmacy the following day.

According to Dea, towards the end of the call, Plaintiff said, "I have PTSD and anger issues.  This is what makes me mad.  I am going to shoot Dr. Merchant and everyone else."  As a result of Plaintiff's threat, Dea feared for her safety and the safety of other VA employees, including Dr. Merchant.  Immediately after the call, Dea reported Plaintiff's statement to her supervisor, who directed her to report the incident to the VAPD.  Her supervisor also instructed her to notify Dr. Merchant about the threat.  Dea complied and contacted both the VAPD and Dr. Merchant.  At her supervisors' direction, Dea prepared an e-mail outlining the details of her call with Plaintiff.

The VAPD prepared an Investigative Report, which included statements from Dea and Fulgene Macaba, a Registered Nurse who worked with Dr. Merchant.  On April 10, 2014, Mossbrooks and Joy (collectively, the "Officers") interviewed Dea regarding the incident.  Dea advised the Officers that Plaintiff had left two messages with the pharmacy before she spoke to him.  According to Dea, Plaintiff was angry and upset because they had terminated his prior calls, and he was upset with Dr. Merchant because his medications were "screwed up."  Dea also stated that Plaintiff threatened to shoot Dr. Merchant.  Dea advised the Officers that Plaintiff's comments scared her because he was so angry.

On April 10, 2014, the Officers interviewed Plaintiff at his residence.  Plaintiff told the Officers that a VA pharmacy employee hung up on him twice but that he can be "an asshole and rude."  Plaintiff recalled speaking with Dea but denied that he threatened to shoot Dr. Merchant.  According to Plaintiff, he told Dea "I just want to slap something."  Plaintiff told the Officers he did not have a gun or anything to hide and permitted the Officers to search his residence.

On April 11, 2014, Joy completed a Case Authorization/Comprehensive Report of Investigation for presentation to the Los Angeles County District Attorney's Office (the "DA's Office").  The DA's Office reviewed the report and decided to charge Plaintiff with one count of violating Penal Code Section 422 (Criminal Threats).  That same day, Joy presented a Felony Complaint for Arrest Warrant to a Los Angeles Superior Court judge, who found there was probable cause to issue the arrest warrant.

The Officers, along with other law enforcement agents, arrested Plaintiff on the evening of April 11, 2014 at his residence.  Before leaving his house, Plaintiff asked if he could take his medications with him.  According to Mossbrooks, he told Plaintiff that no jail would allow him to bring in his own medications, but he could take a list of the medications with him.  The Officers then transported Plaintiff to the Long Beach City Jail.  When Plaintiff arrived, a nurse determined that Plaintiff's blood pressure was high and Plaintiff was transported to the VA Medical Center

Long Beach Emergency Room for medical clearance. Plaintiff was medically cleared by the VA medical staff that same evening and the Officers transported Plaintiff to the Inmate Reception Center in Los Angeles for booking. On April 12, 2014, Plaintiff was released from custody after his sister posted his bail.

On May 2, 2014, Plaintiff was arraigned in Superior Court and entered a plea of not guilty On August 21, 2014, Plaintiff appeared for a preliminary hearing. At the hearing, Dea testified that Plaintiff said, "I just want to go shoot Dr. Merchant and everyone else" which differed slightly from her original statement that Plaintiff said, "I am going to shoot Dr. Merchant and everyone else." The Superior Court judge determined that there was insufficient evidence that Plaintiff "threatened to commit a crime with the specific intent of the statement made verbally to be taken as a threat." Accordingly, the Superior Court judge dismissed the charge.

When Plaintiff left the courtroom after the preliminary hearing, he passed a witness room where Dea, Dr. Merchant, and the Officers were seated. According to Dea, Plaintiff walked to the glass window of the door to the room and stared at them. Both Dea and Dr. Merchant felt uncomfortable and nervous as a result of Plaintiff's action. Following the incident, the Officers went to the DA's Office to discuss whether the DA's Office should re-file the charge against Plaintiff.

On August 22, 2014, the DA's Office re-filed a Complaint against Plaintiff with the identical charge that had been dismissed by the Court. The new Complaint was presented to a Superior Court judge who determined that there was probable cause to file the charge and issued a second arrest warrant. After the second warrant was issued, a meeting was held to determine where and when to arrest Plaintiff. It was determined that it would be best for Plaintiff to be arrested during his next medical appointment at the VA Medical Center. Accordingly, on August 28, 2014, Plaintiff was arrested at the VA Medical Center, without incident. On August 29, 2014, a Superior Court judge determined that there was probable cause to believe Plaintiff committed the crime charged, and he was ordered to stand trial. Plaintiff was subsequently released on bail.

On November 4, 2014, Plaintiff's counsel requested, and the court agreed to continue his case for six months because of an agreement Plaintiff had reached with the DA's Office. *See* Ex. 59 at 1052:7–10. Pursuant to the parties' agreement, Plaintiff was ordered to continue in counseling with his VA doctors for six months and if there were no issues, the DA's Office would agree to dismiss the case. On May 4, 2015, the Superior Court judge confirmed that Plaintiff had not been arrested and had no other contact with law enforcement during the past six months and that he had completed his counseling treatment. Accordingly, the Court granted the DA's Office's motion to dismiss the charge pursuant to the parties' agreement.

On November 10, 2015, Plaintiff filed this lawsuit. On March 8, 2017, he filed his Second Amended Complaint, asserting claims against Dea, Mossbrooks, Joy, the United States of America, the VA, and David J. Shulkin, the Secretary of the VA (collectively, "Defendants"). Plaintiff brings three claims against the Officers: (1) false arrest; (2) unreasonable and excessive use of force; (3) malicious prosecution; and (4) abuse of process. The Officers move for summary judgment as to each of Plaintiff's claims.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *Am. Int'l Group*, 926 F.2d at 836–37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

### A. False Arrest

Under California law, false arrest and false imprisonment are the same torts—[f]alse arrest is but one way of committing false imprisonment." *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1158 (C.D. Cal. Jan. 12, 2010) (citing *Agasi v. City of Los Angeles*, 15 Cal. 4th 744, 752 (1997)) (internal quotation marks omitted). A plaintiff asserting a claim for false arrest must prove: (1) he was intentionally confined without his consent; (2) the confinement was without lawful privilege; and (3) the confinement was for an appreciable period of time, however brief. *See id.*

To maintain a false arrest claim based on judicial deception, Plaintiff must: (1) make a substantial showing of the Officers' deliberate falsehood or reckless disregard for the truth; and (2) establish that, but for the dishonesty, the arrest would not have occurred. *Liston v. Cnty. of*

*Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).  Whether omissions were material to a judge's probable cause determination is purely a legal question.  *Butler v. Elle*, 281 F.3d 1014,1024 (9th Cir. 2002).  Omissions are material if "the affidavit, once corrected and supplemented," would not have provided a judge with a substantial basis for finding probable cause.  *U.S. v. Stanert*, 762 F. 2d 775, 782 (9th Cir. 1985).  The existence of probable cause is determined by making "a practical, common-sense decision whether, given all the circumstances set forth in the [warrant] affidavit . . ." there is a fair probability that the person named in the arrest warrant committed a crime.  *Illinois v. Gates*, 462 U.S. 212, 239 (1983); *see also U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

Plaintiff argues that the Officers omitted information from their reports that shows that Dea misstated Plaintiff's comments on the voice mail messages he left for the VA pharmacy.  Specifically, Plaintiff contends that Dea told the Officers that Plaintiff left her a message in which he "used explicit language" and stated he was on the phone for the past two hours; yet, the recording of the message shows that Plaintiff did not use explicit language or mention anything about being on the phone for two hours.  Opp'n 22.  According to Plaintiff, the Officers did not provide the recordings of the calls to the DA's Office—if at all—until after Plaintiff was arrested.

In addition, Plaintiff contends that Dea allegedly told the Officers that Plaintiff said "I have PTSD and anger issues.  This is what makes me mad.  I am going to shoot Dr. Merchant and everyone else."  However, according to Plaintiff, Dea told Dr. Merchant at the time of the incident that Plaintiff said "if his meds were not ready, he would shoot the pharmacists and then shoot Dr. Merchant."  Opp'n 22.  The Officers omitted this information in their investigative report.

The Court concludes that the allegedly omitted information is not material because a neutral judge would have had a substantial basis for finding probable cause even if the information had been included.  First, even if the judge had known that there was conflicting information about whether Plaintiff used foul language in his message or that there was a discrepancy as to whether Plaintiff said he was on the phone for the past two hours, it would have been irrelevant to the determination of whether there was a fair probability that Plaintiff threatened to shoot Dr. Merchant.  Similarly, the information regarding the discrepancy between what Dea told Officers and what she allegedly told Dr. Merchant is not material because in both statements, Dea stated that Plaintiff threatened to shoot Dr. Merchant.  Accordingly, the Court concludes that a judge would have no difficulty in determining that there was probable cause to issue the warrant despite the discrepancy because the threats conveyed in the statements were substantially similar.  Because the Court finds that the allegedly omitted information is not material, Plaintiff cannot demonstrate that the Officers committed judicial deception.  Therefore, the Officers are entitled to summary judgment on Plaintiff's false arrest claim.

> **B.     Excessive Force**

A claim against law enforcement officers for excessive force is evaluated under the Fourth Amendment's "objective reasonableness" standard: "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake."

*Id.* at 396 (quotations and citations omitted). "The reasonableness of a particular force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97 (quotation marks and citations omitted). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. The Court also considers, under the totality of the circumstances, the quantum of force used, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental or emotional state. *See Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). "[E]ven though reasonableness traditionally is a question of fact for the jury, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (internal citations omitted).

Plaintiff alleges the Officers used excessive force when executing the arrest warrant and handcuffing Plaintiff.

### 1.     Alleged Use of Excessive Force While Executing the Warrant

Plaintiff claims that Mossbrooks used excessive force while executing the warrant by pushing through the door to Plaintiff's home and shoving Plaintiff to his knees on the hardwood floor even though Plaintiff was allegedly not resisting arrest. Plaintiff also claims that the Officers subjected him to unreasonably harassing and abusive behavior while arresting him by claiming he was a "Vietnam baby killer" and a "pill head." According to Plaintiff, the Officers threatened to abduct and beat him, threatened to shoot him for putting his pants on and lunged at him. Plaintiff claims he suffered physical and emotional injuries as a result of the Officers' actions.

The Court concludes that the Officers' actions upon entering Plaintiff's residence were not objectively unreasonable. First, the Officers presented evidence that when they knocked on the door to Plaintiff's residence and announced they had a warrant to arrest him, he delayed in letting them into his residence. Although Plaintiff indicated he needed to put on clothing before letting the Officers in, given the length of time it took Plaintiff to comply, the Officers were concerned about the reason for Plaintiff's delay. In addition, even if Mossbrooks pushed the door open when Plaintiff finally answered and shoved Plaintiff to his knees to effectuate the arrest, this was not unreasonable given Plaintiff's delay in opening the door and the Officers' understandable desire to quickly effectuate the arrest. *See generally Graham*, 490 U.S. at 396 ("not every push or shove . . . violates the Fourth Amendment"); *see also Luchtel v. Hageman*, 623 F.3d 975, 982 (9th Cir. 2010) (explaining that "police officers need not use the least intrusive means available to them.").

Plaintiff contends that even if the Officers' use of physical force was not unreasonable, their harassing and abusive verbal behavior rises to the level of a Fourth Amendment violation. As Plaintiff correctly notes, the "Fourth Amendment's requirement that a seizure be reasonable

prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot." *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001); *see also Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2001) ("Although the absence of deadly force or physical blows can mean that [a]n instrusion on an arrestee is less significant than most claims of force, that fact alone is not dispositive in excessive force cases.") (internal citation and quotation marks omitted). However, an officer's use of verbal threats, insults, and vulgar language typically does not rise to the level of a Fourth Amendment violation. *See generally Marcillis v. Township of Redford*, 693 F.3d 589, 599 (6th Cir. 2012) (finding that officers' use of any verbal threat against an arrestee does not constitute excessive force); *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d 2007), *abrogated on other grounds by Curley v. Kim*, 499 F.3d 199 (3d 2007) (finding that an officer's use of a gun and vulgar language, without extensive physical contact, does not constitute excessive force); *Giese v. Wichita Police Dep't*, 69 F.3d 1995 WL 634173, at *2 (10th Cir. 1995) (noting that verbal threats "do not constitute the use of excessive force."). Indeed, it is typically only where the officers' verbal conduct amounts to an unnecessary act of violence or violation of bodily integrity that the Ninth Circuit has found that a Fourth Amendment violation occurs. *See Fontana*, 262 F.3d at 881 (explaining that an officer's comments in conjunction with his physical inappropriate, non-consensual touching of an arrestee constituted an abuse of power under the circumstances that amounted to an unreasonable intrusion into the arrestee's bodily integrity in violation of the Fourth Amendment). Those circumstances are not present here. Accordingly, the Court concludes that the Officers are entitled to summary judgment as to Plaintiff's claim that they used excessive force in effectuating his arrest.

### 2. Alleged Use of Excessive Force While Handcuffing Plaintiff

#### a. Whether There Was a Constitutional Violation

Plaintiff also alleges that Mossbrooks used excessive force when handcuffing him. The "overly tight application of handcuffs can, depending on the circumstances, constitute a violation of the Fourth Amendment." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993). Whether handcuffs are too tight "is usually fact-specific and likely to turn on the credibility of the witness." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000).

Plaintiff has presented evidence that the handcuffs Mossbrooks placed on him were very tight and that he complained to Mossbrooks that the handcuffs were hurting him. Pl. Decl. ¶¶ 44, 47. There is no evidence that the Officers took any action after Plaintiff complained to check the tightness of the handcuffs, loosen the handcuffs, or place another set of handcuffs on Plaintiff. The Officers have also not offered any evidence suggesting that it was necessary to place tight handcuffs on Plaintiff. *C.f. Palmer v. Sanderson*, 9. F. 3d 1433, 1436 (9th Cir. 1993) (denying qualified immunity to an officer "who presented no evidence that would justify handcuffing [the plaintiff] so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after [the plaintiff] complained of pain.").

The Officers contend that the handcuffing did not constitute excessive force because there is no evidence that Plaintiff suffered any physical injuries from the arrest. However, the Ninth Circuit has repeatedly stated that physical injury is not required to establish a constitutional violation. *See Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000); *see also Thompson*

*v. Lake*, 607 Fed. Appx. 624, 625 (9th Cir. 2015) (stating that a plaintiff is "not required to show that the handcuffs caused visible physical injury; it is enough that the handcuffs caused [the plaintiff] unnecessary pain."). Therefore, the Court concludes that "a reasonable jury could find that [Mossbrooks] used an unreasonable amount of force in handcuffing [Plaintiff]" and, as a result, "violated h[is] Fourth Amendment rights." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003); *see also Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (holding overly tight handcuffing can constitute excessive force when it causes injury or where officers ignore a plaintiff's complaints that handcuffs are too tight).

### b. Whether the Officers Are Entitled to Qualified Immunity

The Officers argue that even if Mossbrooks' handcuffing of Plaintiff may have violated Plaintiff's constitutional rights, Mossbrooks is still entitled to qualified immunity because a reasonable officer would have concluded that he was entitled to use the amount of force used during the arrest. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) (holding that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law") (internal quotations omitted). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step sequence for determining whether qualified immunity attaches to specific circumstances. First, the Court must determine based on the facts "[t]aken in the light most favorable to the party asserting the injury," whether "the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff satisfies this first step, the Court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.*

In the recent case of *White v. Pauly*, ––– U.S. –––, 137 S.Ct. 548, 552 (2017) (per curiam), the Supreme Court held that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" In addition, the Supreme Court held that "[a]s this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* Indeed, the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted), but to consider "whether the violative nature of particular conduct is clearly established." *Id.* at 742; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that the relevant inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition") (quotation marks omitted). Although the law "do[es] not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) ("Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law") (quotation marks omitted); *Saucier,* 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate"); *see also Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (In performing the second step of the *Saucier* analysis, the Court must consider the "the reasonableness of the officer's belief in the *legality* of his actions. Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in

the grant of qualified immunity.").

The Supreme Court has held that "[s]uch specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine"—in this case, excessive force—"will apply to the factual situation the officer confronts." *Mullenix*, 136 S.Ct. At 308 (quotation marks omitted). In addition, the Ninth Circuit recently explained in *Sharp v. Cnty. of Orange*, __ F.3d __, 2017 WL 4126947, at *7 (9th Cir. Sept. 19, 2017), the importance of specificity in the Fourth Amendment context:

> Except in the rare case of an "obvious" instance of constitutional misconduct, Plaintiffs must "*identify a case* where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment." *White v. Pauly*, ––– U.S. –––, 137 S.Ct. 548, 552 (2017) (per curiam) (emphasis added). In other words, Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful. To achieve that kind of notice, the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

The Court concludes Mossbrooks is not entitled to qualified immunity. At the time the arrest occurred, it was clearly established that overly tight handcuffs constitute excessive force. *See Wall*, 364 F.3d at 1112 ("It is well-established that overly tight handcuffing can constitute excessive force") (internal citation and quotation marks omitted); *LaLonde*, 204 F.3d at 960 ("A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive force.") (internal citations and quotation marks omitted). Accordingly, there is a triable issue of material fact as to whether Mossbrooks' application of the handcuffs constitutes excessive force.

### 3. Alleged Failure to Intercede

"Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) (internal citation and quotation marks omitted). However, an officer can only be held liable for failing to intercede if he had a reasonable opportunity to intercede. *Id.* Plaintiff argues that Joy stood next to Mossbrooks when Mossbrooks threatened to shoot Plaintiff and subsequently pushed open the door and threw Plaintiff to the floor and observed him placing the handcuffs on Plaintiff. Opp'n 11. However, as explained above, Plaintiff has not demonstrated that these actions—under the circumstances—constitute excessive force. Accordingly, Joy cannot be held liable for his failure to interneve.

Moreover, Plaintiff has not presented any evidence that Joy heard Plaintiff state that the handcuffs were too tight or that Joy was aware of Plaintiff's complaint. There is also no evidence that Joy visually observed that the handcuffs were too tight. Accordingly, the Court concludes that Plaintiff has not demonstrated that Joy had a reasonable opportunity to intercede with respect to the tight handcuffs and, therefore, he is entitled to summary judgment as to Plaintiff's excessive force claim for failure to intercede.

### C. Malicious Prosecution

A former criminal defendant may assert a malicious prosecution against police officers and investigators who wrongfully caused his prosecution. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *see also Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). To prevail on a claim for malicious prosecution under California law, a plaintiff must prove that the defendant commenced or directed a proceeding to be brought against the plaintiff that was: (1) terminated in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice. *Womack v. Cnty. of Amador*, 551 Supp. 2d 1017, 1031 (E.D. Cal. 2008) (collecting cases); *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (1998). If a plaintiff cannot establish one or more of these elements, his malicious prosecution claim must fail. *StaffPro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1398 (2006).

### 1. There Was No Favorable Termination of the Criminal Action

The favorable termination element "is an essential element of the tort of malicious prosecution, and it is strictly enforced." *Id.* at 1400. This element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Pattiz v. Minye*, 61 Cal. App. 4th 822, 826 (1998). A termination is "not necessarily favorable simply because the party prevailed on the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Sagonowsky*, 64 Cal. App. 4th at 128. "If the resolution of the underlying action leaves some doubt concerning [a] plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Pattiz*, 61 Cal. App. 4th at 826. "The element of favorable termination . . . is a legal question for the [C]ourt to decide." *Womack*, 551 F. Supp. 2d at 1032 (citing *StaffPro*, 136 Cal. App. 4th at 1398).

Plaintiff contends summary judgment should be denied on this claim because the initial charge against him was terminated in his favor and there is a material factual dispute as to whether the second charge was terminated favorably. The Court concludes the outcome of the first charge is not dispositive because the new charge stemming from the identical conduct was re-filed against Plaintiff before he initiated this lawsuit. *See Jaffe v. Stone*, 18 Cal. 2d 146, 156 (1941) (explaining that where criminal charges are dismissed by a judge at a preliminary hearing because the evidence produced against the accused is not sufficient to warrant being held further is a favorable termination and will support a claim for malicious prosecution but if a new proceeding is already instituted against him, the accused can "be precluded from suing for malicious prosecution."); *see also Sierra Club Found. v. Graham*, 72 Cal. App. 4th 1135, 1151 (1999) (stating "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.") (internal citation and quotation marks omitted)). Thus, Plaintiff must also show that the second criminal action was terminated in his favor. The Court concludes that Plaintiff cannot satisfy this burden.

"A termination by dismissal is favorable when it reflects the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant . . . ." *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1056 (2007). "The focus is not on the malicious prosecution plaintiff's opinion of his innocence, but on the opinion of the dismissing party." *Id.* (citing *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 886 (1992)). "The test is whether . . . the termination tends to indicate the

innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." *Id.*

Plaintiff relies on evidence from his second criminal case file to support his arguments. In the DA's Office's file, a deputy district attorney who worked on Plaintiff's second criminal case noted that he would have filed a misdemeanor charge against Plaintiff rather than a felony. The file also contains a deputy district attorney's response to a Customer Satisfaction Survey from the Office of Inspector General. In response to the question "If you declined prosecution after the preparation of a comprehensive ROI, was it due to:" the deputy district attorney checked the boxes that said "the lack of evidence to substantiate the charge" and "the availability of administrative/other remedies." *See* Pl.'s Ex. 3–4. However, the response to this form is not helpful to Plaintiff because the DA's Office did not "decline" prosecution. Moreover, this evidence does not demonstrate that the DA's Office agreed to dismiss the charge against Plaintiff because it thought Plaintiff was innocent or that the action lacked merit. Indeed, the DA's Office's decision to dismiss the charge against Plaintiff was a routine disposition typically used to resolve similar cases without an admission of guilt or innocence as seen from the box checked "availability of other remedies." Accordingly, the Court concludes that Plaintiff cannot demonstrate that the DA's Office's agreement to dismiss the case was a determination on the merits in his favor. *See Cote v. Henderson*, 218 Cal. App. 3d 796, 805 (1990) (finding that a dismissal that results from a plea bargain, an agreement, or a settlement between a criminal defendant the government is not a favorable determination on the merits).

### 2. Prosecutorial Independence Breaks the Casual Chain

In addition, even if Plaintiff could somehow satisfy the favorable termination element, the Court concludes that the DA's Office's decision to prosecute Plaintiff breaks the chain of causation between the Officers' actions and any harm Plaintiff suffered. *See Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) ("a prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff."). There is a presumption that a "prosecutor filing a criminal complaint exercised independent judgment in determining that probable cause for an accused's arrest existed thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers from damages suffered after the complaint was filed." *Id.* (citing *Smiddy v. Varney*, 665 F.2d 261, 266–67 (9th Cir. 1981) overruled on other grounds by *Beck*, 527 F.3d at 865).

Plaintiff argues that he has rebutted this presumption by introducing evidence that the Officers improperly pressured the DA's Office. Opp'n 19. To support his contention, Plaintiff points to correspondence between Mossbrooks and Joy in which Mossbrooks stated: "I asked them for at least a misdemeanor plea in lieu of dismissal . . . I told them if nothing was done, it wouldn't be long before we would be back." Opp'n 20. This evidence is of no assistance to Plaintiff, however, because the disposition agreed to by the DA's Office shows that the DA's Office disregarded Mossbrook's request. Plaintiff also relies on his own testimony that before the second criminal action was filed, Mossbrooks allegedly told Plaintiff, "This ain't over. I'm going to fucking get you." Opp'n 20. However, even if Plaintiff's statement is true, the Ninth Circuit has stated that "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Accordingly,

the Court concludes that Plaintiff has not demonstrated that the Officers improperly pressured the DA's Office.

Plaintiff also argues that the DA's Office's decision to prosecute the action does not immunize the Officers because the Officers acted maliciously in preparing the case against Plaintiff. Opp'n 18–19. Plaintiff points to evidence that Mossbrooks told Plaintiff after the first criminal case was dismissed that "this ain't over. I'm going to fucking get you." Mossbrooks also allegedly told Plaintiff that he had the DA's Office "in his pocket" and was going to ensure Plaintiff's prosecution. To establish the malice element, a plaintiff must show that a defendant's motive was something "other than that of bringing a perceived guilty person to justice." *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 494 (1998). Rather, a plaintiff must demonstrate that the defendant actually had ill will or some improper ulterior motive. *Id.* The Court concludes that Plaintiff failed to make the necessary showing. There is no evidence that Mossbrooks had any previous interactions with Plaintiff or that he had a personal vendetta against Plaintiff. Moreover, as the Officers point out, Mossbrooks' statements are consistent with those of a police officer who believes a suspect is guilty and wants to see him brought to justice. Accordingly, the Court concludes that in the absence of evidence of malice, the Officers are entitled to summary judgment because of the DA Office's decision to prosecute Plaintiff.

### D. Abuse of Process

A claim for abuse of process arises when an individual uses the court's process for a purpose other than that for which the process was designed. This tort is "interpreted broadly to encompass the entire range of procedures incident to litigation." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 750 (E.D. Cal. 2008) (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (1988)). A plaintiff asserting a claim for abuse of process must prove: (1) the defendant contemplated an ulterior motive in using the process; and (2) the defendant committed a wilful act in using the process not proper in the regulator conduct of the proceedings. "A showing of malice, whether express or implied, is required." *Id.* The essence of the tort of "abuse of process" lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. *Brown v. Kennard*, 113 Cal. Rptr. 891, 893–94 (2001). Abuse of process differs from the torts of malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or mis-applying process justified in itself for an end other than that which it was designed to accomplish.

Plaintiff first contends that the Officers abused the legal process when they arrested him for witness intimidation. Based on Exhibit 51, the Court concludes there was probable cause to arrest him for witness intimidation. Accordingly, the Court concludes Plaintiff's abuse of process claim based on this theory fails.

Plaintiff also contends that the Officers abused the court's process by delaying his arrest. The timing of an officer's effectuation of an arrest warrant does not directly implicate the court's process and officers routinely enjoy latitude to exercise discretion as to where and when to arrest a suspect pursuant to a warrant. Thus, this theory of liability fails.

Finally, the Court concludes that Plaintiff cannot demonstrate that the Officers committed abuse of process by intimidating Plaintiff's medical providers. As the Officers note, the undisputed evidence demonstrates that the witnesses were not intimidated by being asked questions

concerning the nature and reason for their letters in support of Plaintiff.  Defs' Ex. 71.  Moreover, letters from the providers were written after the initial arrest warrant was issued and were in the DA's Office's possession when the second warrant was issued.

Accordingly, the Officers are entitled to summary judgment as to Plaintiff's abuse of process claim.

## IV.     Conclusion

For all the foregoing reasons, the Officers' Motion is **GRANTED** in its entirety as to Plaintiff's claims against Joy.  The Motion is **GRANTED** as to Plaintiff's abuse of process, malicious prosecution, and false arrest claims against Mossbrooks.  The Motion is **DENIED** as to Plaintiff's excessive force claim against Mossbrooks related to his handcuffing of Plaintiff.

IT IS SO ORDERED.