**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **CV 15-08756-JFW (Ex)** | Date: October 26, 2017 |

Title:     Nolan Lewis -v- William Mossbrooks et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFF:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                          None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT [filed 9/25/17; Docket No. 117]

On September 25, 2017, Defendant United States of America ("USA") filed a Motion for Summary Judgment. On October 1, 2017, Plaintiff Nolan Lewis ("Plaintiff") filed an Opposition. On October 10, 2017, Defendant filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's October 23, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background[1]**

Plaintiff is a veteran who served in the United States Army during the Vietnam War. After returning from combat, he was diagnosed with post-traumatic stress disorder ("PTSD") and exposure to Agent Orange. In 2004, Plaintiff was classified as one hundred percent disabled and began receiving medical and psychological services from the Veteran's Administration ("VA"). He has received medial, dental, and mental health care treatment from the VA Medical Center in Long Beach, California since 2012.

---

[1] The facts in this case are largely undisputed. The Court has considered the facts in the light most favorable to the nonmoving party, and to the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court overrules those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

On April 9, 2014, Plaintiff left two messages for the pharmacy complaining about his prescriptions. After listening to the messages, Mabel Dea, an employee in the VA pharmacy, returned Plaintiff's call. Plaintiff was extremely angry during the call and vehemently complained about the poor quality of the pharmacy, the VA medical staff, and his medical care provider. Despite his anger, Dea was able to resolve Plaintiff's issues with his prescriptions and arranged for him to pick them up at the pharmacy the following day.

According to Dea, towards the end of the call, Plaintiff said, "I have PTSD and anger issues. This is what makes me mad. I am going to shoot Dr. Merchant and everyone else." As a result of Plaintiff's threat, Dea feared for her safety and the safety of other VA employees, including Dr. Merchant. Immediately after the call, Dea reported Plaintiff's statement to her supervisor, who directed her to report the incident to the VAPD. Her supervisor also instructed her to notify Dr. Merchant about the threat. Dea complied and contacted both the VAPD and Dr. Merchant. At her supervisors' direction, Dea prepared an e-mail outlining the details of her call with Plaintiff.

The VAPD prepared an Investigative Report, which included statements from Dea and Fulgene Macaba, a Registered Nurse who worked with Dr. Merchant. On April 10, 2014, VAPD Detective William Mossbrooks ("Mossbrooks") and VA Office of Inspector General Special Agent Chad Joy ("Joy") (collectively, the "Officers") interviewed Dea regarding the incident. Dea advised the Officers that Plaintiff had left two messages with the pharmacy before she spoke to him. According to Dea, Plaintiff was angry and upset because they had terminated his prior calls, and he was upset with Dr. Merchant because his medications were "screwed up." Dea also stated that Plaintiff threatened to shoot Dr. Merchant. Dea advised the Officers that Plaintiff's comments scared her because he was so angry.

On April 10, 2014, the Officers interviewed Plaintiff at his residence. Plaintiff told the Officers that a VA pharmacy employee hung up on him twice but that he can be "an asshole and rude." Plaintiff recalled speaking with Dea but denied that he threatened to shoot Dr. Merchant. According to Plaintiff, he told Dea "I just want to slap something." Plaintiff told the Officers he did not have a gun or anything to hide and permitted the Officers to search his residence.

On April 11, 2014, Joy completed a Case Authorization/Comprehensive Report of Investigation for presentation to the Los Angeles County District Attorney's Office (the "DA's Office"). The DA's Office reviewed the report and decided to charge Plaintiff with one count of violating Penal Code Section 422 (Criminal Threats). That same day, Joy presented a Felony Complaint for Arrest Warrant to a Los Angeles Superior Court judge, who found there was probable cause to issue the arrest warrant.

The Officers, along with other law enforcement agents, arrested Plaintiff on the evening of April 11, 2014 at his residence. Before leaving his house, Plaintiff asked if he could take his medications with him. According to Mossbrooks, he told Plaintiff that no jail would allow him to bring in his own medications, but he could take a list of the medications with him. The Officers then transported Plaintiff to the Long Beach City Jail. When Plaintiff arrived, a nurse determined that Plaintiff's blood pressure was high and Plaintiff was transported to the VA Medical Center Long Beach Emergency Room for medical clearance. Plaintiff was medically cleared by the VA medical staff that same evening and the Officers transported Plaintiff to the Inmate Reception

Center in Los Angeles for booking. On April 12, 2014, Plaintiff was released from custody after his sister posted his bail.

On May 2, 2014, Plaintiff was arraigned in Superior Court and entered a plea of not guilty On August 21, 2014, Plaintiff appeared for a preliminary hearing. At the hearing, Dea testified that Plaintiff said, "I just want to go shoot Dr. Merchant and everyone else" which differed slightly from her original statement that Plaintiff said, "I am going to shoot Dr. Merchant and everyone else." The Superior Court judge determined that there was insufficient evidence that Plaintiff "threatened to commit a crime with the specific intent of the statement made verbally to be taken as a threat." Accordingly, the Superior Court judge dismissed the charge.

When Plaintiff left the courtroom after the preliminary hearing, he passed a witness room where Dea, Dr. Merchant, and the Officers were seated. According to Dea, Plaintiff walked to the glass window of the door to the room and stared at them. Both Dea and Dr. Merchant felt uncomfortable and nervous as a result of Plaintiff's action. Following the incident, the Officers went to the DA's Office to discuss whether the DA's Office should re-file the charge against Plaintiff.

On August 22, 2014, the DA's Office re-filed a Complaint against Plaintiff with the identical charge that had been dismissed by the Court. The new Complaint was presented to a Superior Court judge who determined that there was probable cause to file the charge and issued a second arrest warrant. After the second warrant was issued, a meeting was held to determine where and when to arrest Plaintiff. It was determined that it would be best for Plaintiff to be arrested during his next medical appointment at the VA Medical Center. Accordingly, on August 28, 2014, Plaintiff was arrested at the VA Medical Center, without incident. On August 29, 2014, a Superior Court judge determined that there was probable cause to believe Plaintiff committed the crime charged, and he was ordered to stand trial. Plaintiff was subsequently released on bail.

On November 4, 2014, Plaintiff's counsel requested, and the court agreed to continue his case for six months because of an agreement Plaintiff had reached with the DA's Office. *See* Ex. 59 at 1052:7–10. Pursuant to the parties' agreement, Plaintiff was ordered to continue in counseling with his VA doctors for six months and if there were no issues, the DA's Office would agree to dismiss the case. On May 4, 2015, the Superior Court judge confirmed that Plaintiff had not been arrested and had no other contact with law enforcement during the past six months and that he had completed his counseling treatment. Accordingly, the Court granted the DA's Office's motion to dismiss the charge pursuant to the parties' agreement.

On November 10, 2015, Plaintiff filed this lawsuit. On March 8, 2017, he filed his Second Amended Complaint, asserting claims against Dea, Mossbrooks, Joy, the USA, the VA, and David J. Shulkin, the Secretary of the VA (collectively, "Defendants"). Plaintiff sues the USA pursuant to the Federal Tort Claims Act. Plaintiff alleges causes of action for: (1) violation of California Civil Code Section 52.1; (2) intentional infliction of emotional distress; (3) negligence; (4) assault and battery; (5) false arrest and imprisonment; (6) malicious prosecution and abuse of process; and (7) negligent hiring, supervision, and retention. On March 3, 2017, the Court dismissed the USA's claims for negligence and negligent hiring without leave to amend [Docket No. 84], supervision, and retention. The USA moves for summary judgment on all of Plaintiff's remaining claims.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not speculation."  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party."  *Am. Int'l Group*, 926 F.2d at 836–37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

### A. Civil Code Section 52.1

California Civil Code Section 52.1 (the "Bane Act") provides a right to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]."  "There are two distinct elements for a [S]ection 52.1 cause of action."  *Henneberry v. City of Newark*, 2017 WL 1493006, at *16 (N.D. Cal. April 26, 2017).  A plaintiff must show: (1) intentional interference or attempted interference with a state or federal constitutional or legal right; and (2) the interference or attempted interference was by threats, intimidation or coercion.  *Id.* (citing *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015), *review denied* (May 20, 2015) (citations omitted).

The Court concludes that Plaintiff cannot establish the essential elements of this cause of action. Although Plaintiff has raised a triable issue as to whether Mossbrooks used excessive force in applying handcuffs that were too tight, a majority of courts have found that "an excessive force claim is insufficient to state a claim for violation of Section 52.1 absent an allegation that the defendant used such force to interfere with a separate, independent right." *Williams v. Cnty. of Riverside*, 2014 WL 1095909, at *2 (C.D. Cal. March 19, 2014) (stating "The Fourth Amendment right to be free from excessive force is not such a separate, independent right."). The evidence demonstrates that Plaintiff was arrested lawfully. Accordingly, Plaintiff cannot prevail on his Bane Act claim.

In addition, Plaintiff has not demonstrated that the Officers used threats, coercion or intimidation to interfere with a constitutionally protected right. As the USA points out, to establish a violation of Section 52.1, Plaintiff must show that the threats against him caused him to reasonably believe that if he exercised a state or federal right, Mossbrooks would commit violence against him. *See e.g.*, *Mena v. Kern High School Dist.*, 2017 WL 2793856 (Cal. App. June 28, 2017). Accordingly, the Court concludes the USA is entitled to summary judgment as to Plaintiff's Bane Act claim.

### B.  Intentional Infliction of Emotional Distress

Because Plaintiff's claims against the USA are brought pursuant to the Federal Tort Claims Act, California substantive law governs the claims. *See Molzof v. United States*, 502 U.S. 301, 305 (1992). The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) a plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of emotional distress by a defendant's outrageous conduct. *Corales v. Bennett*, 567 F3d. 554, 571 (9th Cir. 2009). To be considered outrageous, the conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal. 3d 197, 209 (1982) (internal quotation marks and citation omitted).

Plaintiff contends that Mossbrooks' use of insults and vulgar language, coupled with his search of Plaintiff's tablet and physical contact with Plaintiff during the arrest, constitutes outrageous conduct. However, as the USA points out, "mere insulting language, without more, ordinarily would not constitute extreme outrage" without aggravated circumstances, *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 497–97 (1970), and the evidence does not demonstrate that aggravating circumstances were present. *See also Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1988) (the tort of intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). Accordingly, the Court concludes that the USA is entitled to summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

### C.  Assault and Battery

Plaintiff contends that the USA is liable for assault and battery because Mossbrooks threatened him, verbally assaulted him, and used vulgar language towards him while effectuating the arrest. Assault is the "unlawful attempt, coupled with a present ability, to commit a violent

injury on the person of another." Cal. Penal Code § 240.  Battery is "any willful and unlawful use of force or violence upon the person of another."  Cal. Penal Code § 242.  The essence of battery is intentional, harmful, or offensive contact, while assault is based on the apprehension of that contact.

To prevail on his battery claim, Plaintiff must demonstrate: (1) an employee of the USA intentionally engaged in an act that resulted in a harmful or offensive contact with Plaintiff's person; (2) Plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss or harm to Plaintiff.  *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).

To prevail on his assault claim, Plaintiff must prove: (1) an employee of the United States threatened to touch Plaintiff in a harmful or offensive manner; (2) it reasonably appeared to Plaintiff that the threat was about to be carried out; (3) Plaintiff did not consent to the conduct; (4) Plaintiff was harmed; and (5) the conduct was a substantial factor in causing the harm.  *Id.*

In cases involving assault and battery allegedly inflicted during the course of an arrest, a plaintiff bears the burden of establishing the use of unreasonable force.  *Tekle v. United States*, 2009 WL 1303357, at *8 (C.D. Cal. 2009) (citing *Edison v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998)).  This inquiry is similar to the inquiry a court undertakes when analyzing whether a Fourth Amendment violation occurred.  *Id.*  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The Court concludes that the Officers' conduct while effectuating the arrest of Plaintiff was not unreasonable.  As explained more fully in the Court's Order regarding the Officer's Motion for Summary Judgment, verbal threats and foul language do not typically rise to the level of a Fourth Amendment violation.  Moreover, Mossbrooks' use of physical force in pushing the door open and taking Plaintiff to the ground to effectuate the arrest was reasonable in light of the circumstances, especially in light of Plaintiff's delay in opening the door.  However, placing a suspect in handcuffs that were too tight even if Plaintiff resisted is unreasonable conduct.  Accordingly, the Court concludes the USA is not entitled to summary judgment on this claim.

### D.    False Arrest

Under California law, false arrest and false imprisonment are the same torts—[f]alse arrest is but one way of committing false imprisonment."  *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1158 (C.D. Cal. Jan. 12, 2010) (citing *Agasi v. City of Los Angeles*, 15 Cal. 4th 744, 752 (1997)) (internal quotation marks omitted).  A plaintiff asserting a claim for false arrest must prove: (1) he was intentionally confined without his consent; (2) the confinement was without lawful privilege; and (3) the confinement was for an appreciable period of time, however brief.[2]    *See id.*

---

[2] Plaintiff also contends that the Officers did not have lawful authority to arrest him off of VA property.  Plaintiff failed to allege this theory in his Second Amended Complaint and the Court concludes that the USA did not have sufficient notice of this theory during the course of discovery to defend against it.  Accordingly, the Court will not consider this unpleaded theory of liability in ruling on the USA's Motion for Summary Judgment.  *See Bullard v. Wastequip Mfg. Co. LLC*, 2015

Plaintiff contends that the USA is liable for false arrest because the Officers acted maliciously in obtaining the arrest warrant by presenting false information to obtain the arrest warrant and withholding exculpatory evidence. Opp'n 20; *see Laible v. Superior Court*, 157 Cal. App. 3d 44, 47 (1984). For supporting evidence, Plaintiff points to: (1) Dr. Merchant's statement that he was surprised to hear Plaintiff made such a threat against him; (2) Dea's imperfect recollection of Plaintiff's exact statements in the voicemail messages he left with the VA pharmacy; and (3) Joy's representation that Plaintiff stated he "knew what [Joy] was talking about" when Joy called Plaintiff to try to set up a meeting. Plaintiff also argues that the Officers verbally abused him and treated him reprehensibly while arresting him.

The Court concludes that Plaintiff has not demonstrated that the Officers acted with malice in obtaining the arrest warrant. First, as the USA points out, there is no evidence that Dr. Merchant advised the officers that he did not believe Plaintiff made the threat or that he was not capable of making the threat. Second, Dea's inability to recall, verbatim, everything that Plaintiff said in the voicemail messages does not negate her ability to recall Plaintiff's statements during their telephone conversation. Third, Plaintiff cannot rely solely on his own statement to establish that the Officers falsified a report. *See Newman v. Cnty. of Orange*, 457 F.3d 991, 994–95 (9th Cir. 2006). Finally, the Officers' use of threats and physical force during the arrest was reasonable under the circumstances and consistent with generally accepted law enforcement techniques and undertaken after the arrest warrant was obtained. *See generally Tekle*, 2009 WL 1303357, at *9. Accordingly, the USA is entitled to summary judgment on this claim.

### E. Malicious Prosecution and Abuse of Process

#### 1. Malicious Prosecution

A former criminal defendant may assert a malicious prosecution against police officers and investigators who wrongfully caused his prosecution. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *see also Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). To prevail on a claim for malicious prosecution under California law, a plaintiff must prove that the defendant commenced or directed a proceeding to be brought against the plaintiff that was: (1) terminated in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice. *Womack v. Cnty. of Amador*, 551 Supp. 2d 1017, 1031 (E.D. Cal. 2008) (collecting cases); *Sagonowsky v. More*, 64 Cal. App. 4th 122, 128 (1998). If a plaintiff cannot establish one or more of these elements, his malicious prosecution claim must fail. *StaffPro, Inc. v. Elite Show Servs., Inc.*, 136 Cal. App. 4th 1392, 1398 (2006).

##### a. There Was No Favorable Termination of the Criminal Action

---

WL 12766467, at *10–13 (C.D. Cal. April 14, 2015) (collecting cases in which courts have refused to permit plaintiffs to defeat a motion for summary judgment based on unpleaded theories of liability); *see also Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Moreover, the Court finds that the evidence and argument the USA submitted regarding the relevant portion of the VA handbook shows that the Officers had legal authority to arrest Plaintiff at his residence. *See* Reply 8 n. 5; Pl.'s Ex. 9; Joint Statement of Undisputed Fact No. 19.

The favorable termination element "is an essential element of the tort of malicious prosecution, and it is strictly enforced." *Id.* at 1400. This element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." *Pattiz v. Minye*, 61 Cal. App. 4th 822, 826 (1998). A termination is "not necessarily favorable simply because the party prevailed on the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." *Sagonowsky*, 64 Cal. App. 4th at 128. "If the resolution of the underlying action leaves some doubt concerning [a] plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *Pattiz*, 61 Cal. App. 4th at 826. "The element of favorable termination . . . is a legal question for the [C]ourt to decide." *Womack*, 551 F. Supp. 2d at 1032 (citing *StaffPro*, 136 Cal. App. 4th at 1398).

Plaintiff contends summary judgment should be denied on this claim because the initial charge against him was terminated in his favor and there is a material factual dispute as to whether the second charge was terminated favorably. The Court concludes the outcome of the first charge is not dispositive because the new charge stemming from the identical conduct was re-filed against Plaintiff before he initiated this lawsuit. *See Jaffe v. Stone*, 18 Cal. 2d 146, 156 (1941) (explaining that where criminal charges are dismissed by a judge at a preliminary hearing because the evidence produced against the accused is not sufficient to warrant being held further is a favorable termination and will support a claim for malicious prosecution but if a new proceeding is already instituted against him, the accused can "be precluded from suing for malicious prosecution."); *see also Sierra Club Found. v. Graham*, 72 Cal. App. 4th 1135, 1151 (1999) (stating "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.") (internal citation and quotation marks omitted)). Thus, Plaintiff must also show that the second criminal action was terminated in his favor. The Court concludes that Plaintiff cannot satisfy this burden.

"A termination by dismissal is favorable when it reflects the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant . . . ." *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1056 (2007). "The focus is not on the malicious prosecution plaintiff's opinion of his innocence, but on the opinion of the dismissing party." *Id.* (citing *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 886 (1992)). "The test is whether . . . the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." *Id.*

Plaintiff relies on evidence from his second criminal case file to support his arguments. In the DA's Office's file, a deputy district attorney who worked on Plaintiff's second criminal case noted that he would have filed a misdemeanor charge against Plaintiff rather than a felony. The file also contains a deputy district attorney's response to a Customer Satisfaction Survey from the Office of Inspector General. In response to the question "If you declined prosecution after the preparation of a comprehensive ROI, was it due to:" the deputy district attorney checked the boxes that said "the lack of evidence to substantiate the charge" and "the availability of administrative/other remedies." *See* Pl.'s Ex. 3–4. However, the response to this form is not helpful to Plaintiff because the DA's Office did not "decline" prosecution. Moreover, this evidence

does not demonstrate that the DA's Office agreed to dismiss the charge against Plaintiff because it thought Plaintiff was innocent or that the action lacked merit. Indeed, the DA's Office's decision to dismiss the charge against Plaintiff was a routine disposition typically used to resolve similar cases without an admission of guilt or innocence as seen from the box checked "availability of other remedies." Accordingly, the Court concludes that Plaintiff cannot demonstrate that the DA's Office's agreement to dismiss the case was a determination on the merits in his favor. *See Cote v. Henderson*, 218 Cal. App. 3d 796, 805 (1990) (finding that a dismissal that results from a plea bargain, an agreement, or a settlement between a criminal defendant the government is not a favorable determination on the merits).

### b. Prosecutorial Independence Breaks the Casual Chain

In addition, even if Plaintiff could somehow satisfy the favorable termination element, the Court concludes that the DA's Office's decision to prosecute Plaintiff breaks the chain of causation between the Officers' actions and any harm Plaintiff suffered. *See Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) ("a prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff."). There is a presumption that a "prosecutor filing a criminal complaint exercised independent judgment in determining that probable cause for an accused's arrest existed thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers from damages suffered after the complaint was filed." *Id.* (citing *Smiddy v. Varney*, 665 F.2d 261, 266–67 (9th Cir. 1981) overruled on other grounds by *Beck*, 527 F.3d at 865).

Plaintiff argues that he has rebutted this presumption by introducing evidence that the Officers improperly pressured the DA's Office. Opp'n 19. To support his contention, Plaintiff points to correspondence between Mossbrooks and Joy in which Mossbrooks stated: "I asked them for at least a misdemeanor plea in lieu of dismissal . . . I told them if nothing was done, it wouldn't be long before we would be back." Opp'n 20. This evidence is of no assistance to Plaintiff, however, because the disposition agreed to by the DA's Office shows that the DA's Office disregarded Mossbrook's request. Plaintiff also relies on his own testimony that before the second criminal action was filed, Mossbrooks allegedly told Plaintiff, "This ain't over. I'm going to fucking get you." Opp'n 20. However, even if Plaintiff's statement is true, the Ninth Circuit has stated that "a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." *See Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). Accordingly, the Court concludes that Plaintiff has not demonstrated that the Officers improperly pressured the DA's Office.

Plaintiff also argues that the DA's Office's decision to prosecute the action does not immunize the Officers because the Officers acted maliciously in preparing the case against Plaintiff. Opp'n 18–19. Plaintiff points to evidence that Mossbrooks told Plaintiff after the first criminal case was dismissed that "this ain't over. I'm going to fucking get you." Mossbrooks also allegedly told Plaintiff that he had the DA's Office "in his pocket" and was going to ensure Plaintiff's prosecution. To establish the malice element, a plaintiff must show that a defendant's motive was something "other than that of bringing a perceived guilty person to justice." *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 494 (1998). Rather, a plaintiff must demonstrate that the defendant actually had ill will or some improper ulterior motive. *Id.* The Court concludes that Plaintiff failed to make

the necessary showing. There is no evidence that Mossbrooks had any previous interactions with Plaintiff or that he had a personal vendetta against Plaintiff. Moreover, as the Officers point out, Mossbrooks' statements are consistent with those of a police officer who believes a suspect is guilty and wants to see him brought to justice. Accordingly, the Court concludes that in the absence of evidence of malice, the Officers are entitled to summary judgment because of the DA Office's decision to prosecute Plaintiff. Therefore, the USA is entitled to summary judgment on this claim.

  **2. Abuse of Process**

  A claim for abuse of process arises when an individual uses the court's process for a purpose other than that for which the process was designed. This tort is "interpreted broadly to encompass the entire range of procedures incident to litigation." *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 750 (E.D. Cal. 2008) (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (1988)). A plaintiff asserting a claim for abuse of process must prove: (1) the defendant contemplated an ulterior motive in using the process; and (2) the defendant committed a wilful act in using the process not proper in the regulator conduct of the proceedings. "A showing of malice, whether express or implied, is required." *Id.* The essence of the tort of "abuse of process" lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. *Brown v. Kennard*, 113 Cal. Rptr. 891, 893–94 (2001). Abuse of process differs from the torts of malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or mis-applying process justified in itself for an end other than that which it was designed to accomplish.

  Plaintiff also contends that the Officers abused the court's process by delaying his arrest. The timing of an officer's effectuation of an arrest warrant does not directly implicate the court's process and officers routinely enjoy latitude to exercise discretion as to where and when to arrest a suspect pursuant to a warrant. Thus, this theory of liability fails.

  Finally, the Court concludes that Plaintiff cannot demonstrate that the Officers committed abuse of process by intimidating Plaintiff's medical providers. As the Officers note, the undisputed evidence demonstrates that the witnesses were not intimidated by being asked questions concerning the nature and reason for their letters in support of Plaintiff. Defs' Ex. 71. Moreover, letters from the providers were written after the initial arrest warrant was issued and were in the DA's Office's possession when the second warrant was issued.

  Accordingly, the USA is entitled to summary judgment as to Plaintiff's abuse of process claim.

## IV. Conclusion

For all the foregoing reasons, the USA's Motion is **GRANTED** as to Plaintiff's claims for violation of California Civil Code Section 52.1; intentional infliction of emotional distress; false arrest; and malicious prosecution and abuse of process and **DENIED** as to Plaintiff's claim for assault and battery related to Mossbrooks' handcuffing of Plaintiff.

IT IS SO ORDERED.