**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.     **CV 15-08756-JFW (Ex)**                                    Date: October 25, 2017

Title:       Nolan Lewis -v- William Mossbrooks et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFF:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                           None

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING DEFENDANT DAVID J. SHULKIN'S MOTION FOR SUMMARY JUDGMENT [filed 9/25/17; Docket No. 118]**

    On September 25, 2017, Defendant David J. Shulkin ("Shulkin") filed a Motion for Summary Judgment. On October 1, 2017, Plaintiff Nolan Lewis ("Plaintiff") filed an Opposition. On October 10, 2017, Defendant filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's October 23, 2017 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.     Factual and Procedural Background**[1]

    Plaintiff is a veteran who served in the United States Army during the Vietnam War. After returning from combat, he was diagnosed with post-traumatic stress disorder ("PTSD") and exposure to Agent Orange. In 2004, Plaintiff was classified as one hundred percent disabled and began receiving medical and psychological services from the Veteran's Administration ("VA"). He has received medial, dental, and mental health care treatment from the VA Medical Center in Long Beach, California since 2012.

---

[1] The facts in this case are largely undisputed. The Court has considered the facts in the light most favorable to the nonmoving party, and to the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court overrules those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

Shulkin is the current Secretary of the VA. He is in charge of implementing all VA policies and regulations.

On April 9, 2014, Plaintiff left two messages for the pharmacy complaining about his prescriptions. After listening to the messages, Mabel Dea, an employee in the VA pharmacy, returned Plaintiff's call. Plaintiff was extremely angry during the call and vehemently complained about the poor quality of the pharmacy, the VA medical staff, and his medical care provider. Despite his anger, Dea was able to resolve Plaintiff's issues with his prescriptions and arranged for him to pick them up at the pharmacy the following day.

According to Dea, towards the end of the call, Plaintiff said, "I have PTSD and anger issues. This is what makes me mad. I am going to shoot Dr. Merchant and everyone else." As a result of Plaintiff's threat, Dea feared for her safety and the safety of other VA employees, including Dr. Merchant. Immediately after the call, Dea reported Plaintiff's statement to her supervisor, who directed her to report the incident to the VA Police Department (the "VAPD"). Her supervisor also instructed her to notify Dr. Merchant about the threat. Dea complied and contacted both the VAPD and Dr. Merchant. At her supervisors' direction, Dea prepared an e-mail outlining the details of her call with Plaintiff.

The VAPD prepared an Investigative Report, which included statements from Dea and Fulgene Macaba, a Registered Nurse who worked with Dr. Merchant. On April 10, 2014, VAPD Detective William Mossbrooks ("Mossbrooks") and VA Office of Inspector General Special Agent Chad Joy ("Joy") (collectively, the "Officers") interviewed Dea regarding the incident. Dea advised the Officers that Plaintiff had left two messages with the pharmacy before she spoke to him. According to Dea, Plaintiff was angry and upset because they had terminated his prior calls, and he was upset with Dr. Merchant because his medications were "screwed up." Dea also stated that Plaintiff threatened to shoot Dr. Merchant. Dea advised the Officers that Plaintiff's comments scared her because he was so angry.

On April 10, 2014, the Officers interviewed Plaintiff at his residence. Plaintiff told the Officers that a VA pharmacy employee hung up on him twice but that he can be "an asshole and rude." Plaintiff recalled speaking with Dea but denied that he threatened to shoot Dr. Merchant. According to Plaintiff, he told Dea "I just want to slap something." Plaintiff told the Officers he did not have a gun or anything to hide and permitted the Officers to search his residence.

On April 11, 2014, Joy completed a Case Authorization/Comprehensive Report of Investigation for presentation to the Los Angeles County District Attorney's Office (the "DA's Office"). The DA's Office reviewed the report and decided to charge Plaintiff with one count of violating Penal Code Section 422 (Criminal Threats). That same day, Joy presented a Felony Complaint for Arrest Warrant to a Los Angeles Superior Court judge, who found there was probable cause to issue the arrest warrant.

The Officers, along with other law enforcement agents, arrested Plaintiff on the evening of April 11, 2014 at his residence. Before leaving his house, Plaintiff asked if he could take his medications with him. According to Mossbrooks, he told Plaintiff that no jail would allow him to bring in his own medications, but he could take a list of the medications with him. The Officers then transported Plaintiff to the Long Beach City Jail. When Plaintiff arrived, a nurse determined

that Plaintiff's blood pressure was high and Plaintiff was transported to the VA Medical Center Long Beach Emergency Room for medical clearance.  Plaintiff was medically cleared by the VA medical staff that same evening and the Officers transported Plaintiff to the Inmate Reception Center in Los Angeles for booking.  On April 12, 2014, Plaintiff was released from custody after his sister posted his bail.

On May 2, 2014, Plaintiff was arraigned in Superior Court and entered a plea of not guilty On August 21, 2014, Plaintiff appeared for a preliminary hearing.  At the hearing, Dea testified that Plaintiff said, "I just want to go shoot Dr. Merchant and everyone else" which differed slightly from her original statement that Plaintiff said, "I am going to shoot Dr. Merchant and everyone else." The Superior Court judge determined that there was insufficient evidence that Plaintiff "threatened to commit a crime with the specific intent of the statement made verbally to be taken as a threat." Accordingly, the Superior Court judge dismissed the charge.

When Plaintiff left the courtroom after the preliminary hearing, he passed a witness room where Dea, Dr. Merchant, and the Officers were seated.  According to Dea, Plaintiff walked to the glass window of the door to the room and stared at them.  Both Dea and Dr. Merchant felt uncomfortable and nervous as a result of Plaintiff's action.  Following the incident, the Officers went to the DA's Office to discuss whether the DA's Office should re-file the charge against Plaintiff.

On August 22, 2014, the DA's Office re-filed a Complaint against Plaintiff with the identical charge that had been dismissed by the Court.  The new Complaint was presented to a Superior Court judge who determined that there was probable cause to file the charge and issued a second arrest warrant.  After the second warrant was issued, a meeting was held to determine where and when to arrest Plaintiff.  It was determined that it would be best for Plaintiff to be arrested during his next medical appointment at the VA Medical Center.  Accordingly, on August 28, 2014, Plaintiff was arrested at the VA Medical Center, without incident.  On August 29, 2014, a Superior Court judge determined that there was probable cause to believe Plaintiff committed the crime charged, and he was ordered to stand trial.  Plaintiff was subsequently released on bail.

On November 4, 2014, Plaintiff's counsel requested, and the court agreed to continue his case for six months because of an agreement Plaintiff had reached with the DA's Office.  *See* Ex. 59 at 1052:7–10.  Pursuant to the parties' agreement, Plaintiff was ordered to continue in counseling with his VA doctors for six months and if there were no issues, the DA's Office would agree to dismiss the case.  On May 4, 2015, the Superior Court judge confirmed that Plaintiff had not been arrested and had no other contact with law enforcement during the past six months and that he had completed his counseling treatment.  Accordingly, the Court granted the DA's Office's motion to dismiss the charge pursuant to the parties' agreement.

On November 10, 2015, Plaintiff filed this lawsuit.  On March 8, 2017, he filed his Second Amended Complaint, asserting claims against Dea, Mossbrooks, Joy, the United States of America, the VA, and David Shulkin, the Secretary of the VA (collectively, "Defendants").  Plaintiff brings a single claim against Shulkin, in his official capacity, for violation of the Rehabilitation Act. Plaintiff seeks both injunctive relief and damages in connection with this claim.

## II.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not speculation."  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249–50; *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *Am. Int'l Group*, 926 F.2d at 836–37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III.   Discussion

Section 504 of the Rehabilitation Act of 1973 "creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance."  *Fleming v. Yuma Reg.'l Med. Ctr.*, 587 F.3d 938, 940 (9th Cir. 2009).[2]  Courts apply

---

[2] To recover monetary damages under the Rehabilitation Act, a plaintiff must prove a defendant intentionally discriminated against him.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see also Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017) ("[c]ompensatory damages are not available under . . . [Section] 504 absence a showing of discriminatory intent.")) (internal citation omitted).  This standard may be satisfied by showing discriminatory animus or deliberate indifference.  *Id.*  In the Ninth Circuit, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a

the same standards to discrimination claims brought under the Rehabilitation Act as they do to discrimination claims brought under the ADA.  *See Walton v. United States Marshals Servs.*, 492 F.3d 988, 1003 n.1 (9th Cir. 2007); *see also Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999) ("[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act); 42 U.S.C. § 12133 ("the remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to the ADA claims.]).  To establish a violation of Section 504, a plaintiff must show that: (1) he is a disabled individual; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely because of his disability; and (4) the program receives federal financial assistance.  *See Duvall v. Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001);  *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F. 3d 976, 978 (9th Cir. 1997).

### 1.     Whether Plaintiff Is Disabled for Purposes of the Act

Shulkin argues that Plaintiff cannot prevail on his Rehabilitation Act claim because he has not set forth sufficient evidence to establish he has a disability.  For purposes of the Rehabilitation Act, a disability is: (a) a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, eating, sleeping, breathing, learning, and working.  29 C.F.R. § 1630.2(I); 42 U.S.C. § 12102 (2)(A); *see also Coons v. Sec'y of the United States Dep't of the Treasury*, 383 F.3d 879, 885 (9th Cir. 2004).  A major life activity is substantially limited where an individual is significantly restricted "as compared to the condition, manner or duration under which the average person" can perform the same activity.  *Coons*, 383 F.3d at 885.

Plaintiff alleges that he is disabled for purposes of the Rehabilitation Act because he suffers from severe and chronic PTSD that substantially limits his major life activities.  Specifically, Plaintiff contends that his PTSD makes it difficult for him to sleep.  Based on this evidence, the Court concludes Plaintiff has raised a genuine issue of material fact as to whether he is disabled for purposes of the Rehabilitation Act.

### 2.     Whether Plaintiff Has Demonstrated a Failure to Reasonably Accommodate

The Rehabilitation Act applies to arrests.  *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) ("Title II [of the ADA] applies to arrests.").  The Ninth Circuit "includes arrests as a service, program, or activity of the police" and, thus, an activity that receives financial assistance for purposes of Section 504.  *Thomas v. Sacramento Cnty.*, 2017 WL 550052, at *4 (E.D. Cal. Feb. 10, 2017).  Accordingly, arresting officers must provide reasonable accommodation when arresting people with disabilities.  *Id.*  The Ninth Circuit has recognized two types of Rehabilitation Act claims based on an arrest: (1) "wrongful arrest, where police wrongly

---

failure to act upon that . . . likelihood."  *Id.* at 1139.  A plaintiff may establish that a defendant had the requisite knowledge or notice by showing that he "alerted the public entity to [his] need for accommodation or where the need for accommodation is obvious, or required by statute or obligation."  *Id.*

arrest someone with a disability because they misperceive the effects of the disability as criminal activity;" and (2) "reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of the investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *See Sheehan*, 743 F.3d at 1232.

Plaintiff asserts a reasonable accommodation type of claim and "bears the burden of producing evidence of the existence of a reasonable accommodation." *Sheehan*, 743 F.3d at 1232–33. An entity may defeat a reasonable accommodation claim by showing "that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "[A] public entity is on notice that an individual needs a reasonable accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *Givens v. Cnty. of Sacramento*, 2016 WL 6599810, at *4 (E.D. Cal. Nov. 7, 2016). Exigent circumstances inherent in an arrest inform the reasonable accommodation analysis. *See Sheehan*, 743 F.3d at 1232.

Plaintiff alleges that the Officers failed to provide him with reasonable accommodations when they subjected him to investigative techniques that aggravated his PTSD and denied him access to his medications while he was incarcerated.[3] According to Plaintiff, Shulkin, as Secretary of the VA, is vicariously liable for the Officers' actions. The Court concludes that Plaintiff cannot prevail on either theory of his Rehabilitation Act claim.

First, Plaintiff has not demonstrated that the Officers used "deplorable investigative techniques" or deprived him of his medicine because of his PTSD. "To find that a refusal to reasonably accommodate a person with a qualifying disability was by reason of the disability, Plaintiff needs to [show] that his own disability was a motivating factor in the non-accommodation of his arrest." *Thomas*, 2017 WL 550052, at *5; *see also* 29 U.S.C. § 794. There is no evidence that suggests that the Officers used threats, insults, or profane language towards Plaintiff because he has PTSD. Indeed, as Shulkin points out, officers routinely use interrogation techniques designed to intimidate a suspect regardless of whether he has PTSD. Moreover, even if Plaintiff could somehow show the Officers' actions were taken solely for the purpose of discriminating against him because of his PTSD, Plaintiff cannot demonstrate that he suffered greater injury or indignity in this process than other arrestees. Plaintiff's claim that he was "frightened and upset" by the Officers' actions and "felt he was in physical danger" are emotions that many arrestees feel when subjected to confrontational interrogation techniques.

In addition, Plaintiff cannot demonstrate that the Officers' failure to provide him with his medications constitutes a violation of the Rehabilitation Act. The undisputed evidence suggests that the Officers refused to allow Plaintiff to take his medications with him because no jail will allow

---

[3] In his Opposition, Plaintiff also states that Defendants failed to adjust his handcuffs, which were causing great pain to his chronic neck and shoulder injuries. Plaintiff has not alleged that his neck and shoulder injuries render him disabled within the meaning of the Rehabilitation Act. Accordingly, the Court does not consider this theory of liability.

an inmate to bring in his own medication. Furthermore, when Plaintiff asked to take the medications with him, Mossbrooks permitted Plaintiff to write down the medications and take the list with him to jail. Also, once Plaintiff was transported to jail, he was examined by a nurse and then transported to the VA Long Beach Emergency Room for medical clearance. Accordingly, the Officers cannot be blamed for any medical personnel's failure to provide him with medications he may have needed while in jail. To the extent Plaintiff claims he was denied access to his doctor or specific medical care during the course of the arrest, the allegations fail to support a claim under the Rehabilitation Act. *See Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (the Rehabilitation Act "prohibits discrimination because of disability, not inadequate treatment for disability"). Accordingly, the Court concludes that Plaintiff cannot demonstrate that the Officers failed to accommodate him and, thus, Shulkin is entitled to summary judgment on Plaintiff's Rehabilitation Act claim.

## IV. Conclusion

For all the foregoing reasons, Shulkin's Motion is **GRANTED** in its entirety.

IT IS SO ORDERED.