**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 4 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NOLAN LEWIS,<br><br>       Plaintiff-Appellant,<br><br> v.<br><br>WILLIAM MOSSBROOKS; et al.,<br><br>       Defendants-Appellees. | No.   17-56853<br><br>D.C. No.<br>2:15-cv-08756-JFW-E<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted September 12, 2019
Pasadena, California

Before: WARDLAW, BERZON, and BADE, Circuit Judges.

Nolan Lewis appeals from the district court's dismissal of and grant of summary judgment on his claims under the Privacy Act, the Rehabilitation Act, the Federal Tort Claims Act ("FTCA"), and the United States Constitution. We affirm in part and reverse in part.

1. The district court correctly dismissed Lewis' Privacy Act claim without

---

     *     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

leave to amend. Lewis argues the government violated the Privacy Act by failing to remove a flag in his record relating to an earlier incident at a Veterans Affairs ("VA") facility. Because he seeks damages, Lewis must show that the government violated the Act "in a manner which was intentional or willful," 5 U.S.C. § 552a(g)(4), which requires a showing of something more than gross negligence. *See Covert v. Harrington*, 876 F.2d 751, 756 (9th Cir. 1989).

None of the allegations in the first amended complaint suggest that in failing to remove the flag, any VA employee "flagrantly disregard[ed]" Lewis' privacy rights or acted "without grounds for believing [their action] to be lawful," rather than negligently. *Id*. at 756-57 (citation omitted). And nothing in Lewis' first amended complaint—or in his subsequent briefing on the issue—suggests how Lewis could amend his claim to show gross negligence by government officials. The district court therefore did not abuse its discretion in denying leave to amend. *See Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

2. The district court incorrectly granted summary judgment on Lewis' Rehabilitation Act claim. There were available accommodations during Lewis' interrogation that would not have "fundamentally alter[ed] the nature" of the interrogation. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1233 (9th Cir. 2014), *rev'd in part on other grounds*, 135 S. Ct. 1765 (2015); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018). The officers could, for

example, have "employ[ed] less confrontational tactics" and refrained from the harsh interrogation techniques they used.[1] *See id.*

To recover damages, Lewis must also show the officers acted with "deliberate indifference" toward his disability. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely" and a "failure to act [that] must be a result of conduct that is more than negligence, and involves an element of deliberateness." *Id.* at 1139. Here, there is evidence Officer Mossbrooks targeted Lewis' disability during the interrogation—in particular, according to Lewis, Mossbrooks called Lewis a "fucking pillhead" and a "Vietnam baby killer[]." These targeted statements do not reflect an interrogation "taking [its] normal course." *Id.*[2]

---

[1] The government argues Lewis never explicitly requested an accommodation. But, as *Sheehan* demonstrates, individuals being interrogated or arrested typically do not have the opportunity formally to request an accommodation. There, rather than request an accommodation, a mentally ill woman told police officers to "leave her alone" and then resisted arrest. *Sheehan*, 743 F.3d at 1219. Lewis states that he repeatedly asked the officers to stop, and there is evidence the officers knew he needed to be accommodated because they were aware he suffered from PTSD, had received training on the effects of PTSD, and had experience working with individuals suffering from PTSD.

[2] Lewis also argues the officers violated the Rehabilitation Act by refusing to allow him to use or bring his medications with him after his arrest and then instructing a doctor not to provide Lewis with a supply of his medication when Lewis was examined at a medical care facility. But Lewis concedes Mossbrooks let him take a list of his medications with him, and there is no evidence Mossbrooks refused to allow any of Lewis' medication-related requests because of animus or

3. The district court properly dismissed Lewis' FTCA negligence claim without leave to amend. Lewis does not plausibly allege that the flag in his records—rather than his phone call to the VA facility—proximately caused the harms that befell him. *See State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 352-53 (2015). Although Lewis incorporated other allegations into his negligence claim by reference, at no point before the district court, in his briefing, or at argument has Lewis specified how those allegations could give rise to a viable negligence claim.

4. The district court incorrectly granted summary judgment in favor of the government on Lewis' FTCA claim for intentional infliction of emotional distress ("IIED"). Lewis asserts Mossbrooks repeatedly "lunged" at him, specifically used taunts connected to his PTSD (calling him a "fucking pillhead" and a "Vietnam baby killer[]"), and threatened to beat him until he confessed. A reasonable juror could find these actions to be so "extreme and outrageous" as to go beyond the bounds of police tactics "usually tolerated in a civilized community," *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted), especially in light of Lewis' PTSD, *see Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 498 n.3 (1970) (noting that "[p]laintiff's susceptibility to emotional distress has often

---

indifference toward Lewis' disability, as opposed to his belief that Lewis could not bring the medicine with him into the detention facility.

been mentioned as significant in determining liability" for IIED claims).  Where "reasonable persons may differ, the trier of fact is to determine whether the conduct has been sufficiently extreme and outrageous to result in liability." *Tekle*, 511 F.3d at 856 (citations and internal quotation marks omitted).

    5. Lewis' FTCA claims for assault and battery fail. To make out a claim against law enforcement officers, a plaintiff must show that the officers used excessive force or conducted an unreasonable search and seizure. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). Here, the record does not reflect that Mossbrooks or Joy used force during the initial interview; Mossbrooks' threat to beat Lewis and "lung[ing]" at Lewis fall short of the type of threats, such as "pointing a loaded gun at a suspect," that constitute excessive force.³  *See Foster v. City of Indio*, 908 F.3d 1204, 1218 (9th Cir. 2018). Nor does Mossbrooks' "harassing and abusive" behavior "rise[] to the level of an 'unreasonable seizure.'" *Fontana v. Haskin*, 262 F.3d 871, 879 (9th Cir. 2001). Lewis invited the officers into his home and was seated without handcuffs throughout the interview. *See Franklin v. Foxworth*, 31 F.3d 873, 876-77 (9th Cir. 1994) (holding that there was an unreasonable seizure where officers "remov[ed] a gravely ill and semi-naked man from his sickbed . . . [and] forc[ed] him to remain

---

³ With respect to Lewis' first arrest, Lewis concedes that there was a delay in which he did not open the door, so throwing the door open and quickly apprehending him was reasonable from Mossbrooks' perspective.

sitting handcuffed in his living room for two hours.").

      6. The district court lacked subject matter jurisdiction over Lewis' Bane Act claim. The FTCA waives sovereign immunity only "where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Based on the terms of that waiver, *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994), established that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id*. at 478. Lewis' Bane Act claim imports a constitutional violation—the use of excessive force—that could not otherwise be the basis for a claim against a private person. Although *Xue Lu v. Powell,* 621 F.3d 944 (9th Cir. 2010), concluded that the FTCA allows Bane Act claims predicated on a violation of a federal statute, *id*. at 950, it did not suggest that the FTCA waiver extends to Bane Act claims deriving from constitutional violations.

      7. Lewis' false arrest claim fails because there is no evidence the officers acted maliciously when securing the warrants for his arrest. *See* Cal. Civ. Code § 43.55(a). Under California law, malice "may be proved by circumstantial evidence, and is defined as that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose." *Beck v. City of Upland*, 527 F.3d 853, 872 (9th Cir. 2008) (quotations omitted). Lewis' strongest evidence of malice is that, according to Lewis, Mossbrooks told him "I'm going to fucking get

6

you" immediately after the dismissal of Lewis' indictment and before Mossbrooks obtained a second warrant for Lewis' arrest. But, in securing that warrant, Mossbrooks did not fail to disclose exculpatory evidence or include false information, so there is no reason to believe the warrant was actually improperly obtained.[4] *See Ting v. United States,* 927 F.2d 1504, 1514 (9th Cir. 1991).

Lewis also argues the officers added "fictional statements" to the reports they used to obtain the first and second warrants for his arrest. The officers included what Mabel Dea, the pharmacist with whom Lewis spoke, initially reported. Although Dea's testimony during Lewis' first preliminary hearing about Lewis' statements differed from her original report, the officers' reliance on the earlier-in-time report for the re-filed warrant does not indicate malice. *See, e.g.*, Fed. R. Evid. 803(5) (allowing the admission of a record "made or adopted by the witness when the matter was fresh in the witness's memory").

8. Lewis' malicious prosecution claim fails for the same reason. The record does not support a finding of malice with regard to either the first or second prosecution. *See Zamos v. Stroud,* 32 Cal. 4th 958, 965-66 (2004); *see also Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 753-54 (1997) (noting that the "tort of

---

[4] The witness intimidation charge that was added to the second warrant—and that increased the cost of Lewis' bail—was supported by a report made by Farrukh Merchant, Lewis' doctor, who claimed that Lewis had "alarmed and scared" him after the dismissal of the first indictment.

malicious prosecution . . . constitutes procuring the arrest or prosecution of another under lawful process, but from a malicious motive and without probable cause.")

9. Lewis' abuse of process claim fails because he offers no evidence that the decisions to take him to a more distant jail after his arrest, to add a witness intimidation charge, or to arrest him immediately before a holiday weekend in any way involved the misapplication of judicial processes. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056-57 (2006).

10. Most of Lewis' *Bivens* claims fall on their merits for substantially the same reasons discussed in the context of his FTCA claims. To the extent those claims involve Dea's conduct, even if Dea were considered a complaining witness, the record at most suggests Dea misheard or misremembered, rather than falsified, what Lewis said to her. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335, 340-41 (1986) (noting that, at common law, "complaining witnesses" could be held liable only with a showing of "malice and [a] lack of probable cause").

**AFFIRMED in part; REVERSED in part.**